

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FARAH ELIAS AKELL, | § | |
| | | No. 08-17-00034-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 34th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20140D01224) |
| | § | |

**O P I N I O N**

A jury convicted Farah Elias Akell of one count of the offense of continuous sexual abuse of Z.G. and A.G.,[1] two young children. TEX. PENAL CODE ANN. §§ 21.02, 21.11(a)(1), 22.011, 22.021. Akell challenges his conviction in two issues, arguing that the trial court erred by not granting the defense's motion for directed verdict (1) based on insufficient evidence to show the alleged offenses occurred within the time frame alleged in the indictment, as required by the governing statute; and (2) based on insufficient evidence to prove Appellant Akell was the person charged in the indictment as to the sexual abuse of A.G. We affirm.

**BACKGROUND**

The indictment alleged that acts of sexual abuse which made up the offense took place

---

[1] To protect the identities of the minor-victims, we refer to them by their initials. *See* TEX. R. APP. P. 9.10(a)(3).

between September 1, 2012, and December 31, 2013. During this period, Z.G. aged from eight to nine years old and A.G. aged from five to six years old. Z.G. and A.G. were sisters who were being raised by their mother Athenea Duron following her divorce from their biological father. Although the girls' father had disappeared from their lives, Duron wanted to maintain contact with his family. Consequently, the girls would often visit with paternal relatives including their grandmother, Paola Rodriguez, and their great aunt and uncle, Alejandra Akell and Appellant Farah Elias Akell. These relatives all lived in a residence on Land Green Street in the City of Socorro, Texas. When Z.G. was first born, Duron herself had lived in that same residence with her first husband and his family. Until December 2013, the girls would spend occasional weekends visiting with their paternal family while their mother was working.

On December 26, 2013, Z.G. and A.G.'s mother testified she entered the girls' bedroom of their own home and saw that her girls were "really close" and they jumped away from each other when she entered their room. Duron described that she had suspected they were kissing, but when she asked them what they were doing, they would not say. Having concerns, Duron went and talked with her husband. Together they decided to consult with Z.G.'s therapist, Bonnie Galvan. Galvan had been counseling Z.G. from when she was five years old because of a diagnosis of ADHD and depression after her father had left.

On December 31, 2013, Galvan met with Z.G. and A.G. During the session, Z.G. and A.G. made an outcry of sexual abuse against their "uncle." The girls told Galvan that their uncle had been "touching" them, and that he would put his hands in their underwear while they were watching movies. Z.G. told Galvan that her uncle would come into her room at the Land Green residence while she was sleeping, and once offered her twenty dollars "if she would . . . let him do

2

stuff to her." A.G. told Galvan that "she had seen [her uncle's] penis and that he would get her to put her hand on him and that he would move it up and down." A.G. also told Galvan that on one occasion her uncle "tried to force her to put his thing in her mouth," and that he would "put his fingers in her." Galvan later testified that the girls told her that the sexual abuse occurred "almost every weekend," and that it happened "mostly every time" they stayed at Akell's residence. On cross-examination, Galvan stated that the girls would "[u]sually . . . say [that the abuse occurred] every weekend[.]" Both girls were "visibly upset" and crying while speaking with Galvan during their initial outcries, and Galvan thereafter continued providing therapy to both of them up through the time of trial. Galvan also noted that both girls exhibited other psychological symptoms consistent with sexual abuse, such as misbehavior at school, feelings of guilt, and nightmares.

Galvan's notes, which the State later presented at trial, stated that Z.G. had told Duron that "while staying at their Uncle's house, . . . he had been touching them, . . . [and] their uncle would lie down next to [Z.G. and A.G.] on the bed while they watched [T.V.] and would touch them on their vagina and anus and often pulled down their underwear to do so." Galvan's notes also recounted that A.G. had told Galvan that her "uncle" exposed himself to her and "tried to get her to touch his penis which [protruded] from his zipper." The notes also stated that the girls had told Galvan that they had told their "aunt" about what had happened, and that she had "scolded their uncle."

Galvan notified Child Protective Services (CPS) immediately after the initial outcry. Detective Alejandro Anaya of the El Paso Police Department later met with a CPS investigator and Duron regarding the outcry, and then spoke to Z.G. and A.G. separately. After speaking to

3

the girls, Detective Anaya determined that a criminal offense had occurred and notified the Crimes Against Children section of the police department. Both girls were later interviewed at the Advocacy Center for the Children of El Paso.

Following the conclusion of the investigation by law enforcement, the State charged Akell with continuous sexual abuse of Z.G. and A.G., who were both younger than fourteen years of age at the time of the offense. In addition to testimony from the girls' mother, Galvan, and Detective Anaya, the State also presented testimony from Z.G. and A.G. Z.G. testified that the sexual abuse by her uncle occurred a total of three times, and that "[i]t would happen kind of often . . ." Z.G. further testified that these incidents began when she entered the third grade and ended near the conclusion of the school year. On one occasion, Z.G. testified that her uncle tried to penetrate her anus with his fingers, and that she felt "a little bit of pressure" from his fingers while he was attempting to do so. She also identified Akell in the courtroom as the "uncle" who committed the sexual abuse toward her. A.G. also testified that her "uncle," whose name she did not remember, had touched her "private parts" when she was around five or six years old. A.G. testified that the uncle who abused her was married to her aunt "Alejandra." When asked if she saw him in the courtroom, however, A.G. was nonresponsive. A.G. testified that he touched her "private part . . . [a] lot of times," that he had attempted to force her to put her head on his "private part," that he touched her "rear end" under her clothing with his "privates," and that she had seen her uncle's "private" three different times.

Akell testified during the defense's case-in-chief. He denied engaging in sexual contact with the girls. Akell also denied offering Z.G. twenty dollars in exchange for sexual contact, but instead claimed that another man was responsible for the sexual abuse. Akell also testified that

4

Z.G. had asked him for the money for a school project and that she had fabricated her story because he did not give her the money.

The jury convicted Akell of continuous sexual abuse of young child or children as charged in the indictment, and the trial court sentenced him to thirty years' imprisonment. This appeal follows.

## DISCUSSION

Akell raises two issues on appeal, arguing that the trial court erred by denying his motion for directed verdict because (1) the record contained legally insufficient evidence to establish the time frame in which the events occurred; and (2) the record as to A.G. contained legally insufficient evidence to prove that he was the person charged in the indictment. We treat these challenges to the trial court's denial of Akell's motion for directed verdict as a challenge to the legal sufficiency of the evidence supporting the conviction. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).

### Applicable Law

In a legal sufficiency challenge, we determine whether, viewing all evidence in the light most favorable to the jury's verdict, any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Evidence may be legally insufficient when the record "contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Id*. (quoting *Britain v. State,* 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citation omitted)). We may not re-weigh evidence or substitute our judgment for that

5

of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, we presume that the jury resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that determination because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

A person commits continuous sexual abuse of a young child or children if, during a period that is thirty days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(b)(1–2). For the purposes of this appeal, an "act of sexual abuse" means an act that is a violation of the penal laws criminalizing (1) indecency with a child, if the actor committed the offense in a manner other than by touching the breast of a child; (2) sexual assault; or (3) aggravated sexual assault. *Id*. §§ 21.02(c)(2–4) (citing TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011, 22.021).

Where, as here, the jury is the trier of fact, the members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed; instead, the jury must only agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse. *Id*. § 21.02(d). Stated differently, the State does not need to prove the exact dates which the sexual abuse occurred, but rather must only prove that there were two or more acts of

6

sexual abuse that occurred during a period that was thirty or more days in duration. *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

## Statutory Time Period

Akell argues in his first issue that the record contains legally insufficient evidence to establish that the alleged events occurred from on or about September 1, 2012, through December 31, 2013, as alleged in the indictment. He further argues that the State did not establish that the offense occurred within the statute of limitations for continuous sexual abuse of a child, and that we should therefore enter a judgment of acquittal. We disagree.

First, when an indictment alleges an "on or about" date for the commission of the offense, the date mentioned must only be a date anterior to the presentation of the indictment and not so remote that prosecution is barred by the relevant statute of limitation. TEX. CODE CRIM. PROC. ANN. art. 21.02; *Sledge v. State*, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997). Here, the indictment was signed on March 18, 2014, well after events alleged in the indictment occurred, and there is no statute of limitation for the offense of continuous sexual abuse of children. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(D); *see also Baez v. State,* 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd), *cert. denied*, 137 S.Ct. 303 (2016) (noting that the Legislature "created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse") (quoting *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.). For these reasons, we find Akell's argument to be without merit. *See Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014) ("when the State uses 'on or about' language [in an indictment] and proves that the offense was committed on a

7

date different from that alleged in the indictment, but before presentment of the indictment and expiration of the applicable statute of limitations, the offense took place 'on or about' the date alleged in the indictment," and such a discrepancy is not a fatal variance) (citing *Sledge*, 953 S.W.3d at 255–56; *Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988)).

Further, when viewing the evidence in the light most favorable to the verdict, we find legally sufficient evidence supporting each element of the charged offense. The record shows that Akell was fifty-nine years of age at the time of trial in 2017, making him approximately fifty-five to fifty-six years old at the time the alleged offenses occurred; likewise, it is undisputed that Z.G. and A.G. were both under fourteen years of age at the time of the alleged offenses. As such, the State established that at the time of the offense, Akell was over seventeen years of age and Z.G. and A.G. were under fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b)(2); *see also Baez*, 486 S.W.3d at 595 (jury may infer the ages of the parties involved by their dates of birth).

The record also supports the jury's determination that the sexual abuse occurred over a period longer than the thirty-day duration necessary to prove the offense. The record contains testimony regarding (1) Z.G.'s and A.G.'s dates of birth; (2) Duron's testimony that the girls stayed over at the Akell residence from the time Z.G. was nine and A.G. was six until December 2013; and (3) Z.G.'s testimony that the abuse started when she was in the beginning of the third grade and ended after the end of that school year. Bearing in mind that the State does not need to prove the exact dates upon which the alleged acts occurred, the jury could have reasonably inferred that the period of sexual abuse committed by Akell took place over a period of time longer than thirty days. *See Baez*, 486 S.W.3d at 595–96; *Buxton*, 526 S.W.3d at 676.

Likewise, the testimony at trial reasonably supported the inference that Akell committed more than two sexual acts over this period. Galvan testified that the girls told her that the sexual abuse occurred "almost every weekend" and that it happened "mostly every time" they stayed at Akell's residence, and on cross-examination Galvan stated that the girls would "[u]sually . . . say [that the abuse occurred] every weekend[.]" Z.G. testified that the sexual abuse by her uncle occurred a total of three times, and that "[i]t would happen kind of often [.]" Further, both Z.G. and A.G. testified that their "uncle" committed multiple individual acts constituting sexual assault, aggravated sexual assault, and indecency with a child, which was supported by Galvan's testimony and clinical notes suggesting the same. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011, 22.021.

In sum, the jury as fact finder was free to believe or disbelieve the witnesses' testimony. Viewing the evidence in the light most favorable to the verdict, we conclude that the record contains legally sufficient evidence to allow a rational jury to have found the elements of continuous sexual abuse of a child beyond a reasonable doubt. *See Queeman*, 520 S.W.3d at 622; *Buxton*, 526 S.W.3d at 676; *see also Baez*, 486 S.W.3d at 595–96 (testimony regarding the victim's birthday compared to the dates of the offense alleged in the indictment, combined with testimony that the first instance of abuse occurred in the "middle of her sixth grade of school," that the defendant touched her "often" and more than ten times in total, was legally sufficient evidence supporting defendant's conviction for continuous sexual abuse of a child under fourteen years of age). Akell's first issue is overruled.

**Identity**

9

In his second issue, Akell argues that the record contains legally insufficient evidence establishing Akell's identity as the individual charged in the indictment. We disagree with this contention as well. The State may prove the identity of the defendant by direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Here, Galvan testified that both witnesses made an outcry of sexual abuse against their "uncle," and both Z.G. and A.G. testified at trial that their "uncle" committed the acts of sexual abuse against them. Further, Duron and Z.G. both identified Akell as Z.G.'s and A.G.'s "uncle," and during the trial each identified Akell in the courtroom as the "uncle" who committed the sexual abuse toward the girls. A.G. also identified that the "uncle" who engaged in sexual contact with her was married to her "Aunt Alejandra;" and, it is undisputed that Alejandra is, in fact, Akell's wife's name.

Although A.G. did not identify Akell in court as the man who committed the abuse toward her, the failure of the victim to make a positive in-court identification does not render a verdict improper and other evidence supports the identification of him as the offender. *See Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.) (citation omitted). While Akell argues that the State was required to prove his identity as to all of the alleged acts, this argument is without merit because the statute concerning this offense states that the State is only required to prove that two sexual acts occurred over a period longer than thirty days. *See* Tex. Penal Code Ann. § 21.02(d); *Baez*, 486 S.W.3d at 595; *Buxton*, 526 S.W.3d at 676.

In sum, we find legally sufficient evidence in the record identifying Akell as the individual who committed the alleged offenses. *See, e.g., Adams v. State*, 418 S.W.3d 803, 812–13 (Tex. App.—Texarkana 2013, pet. ref'd) (evidence was legally sufficient to establish

10

defendant's identity as the individual who committed charged offenses where child-victim made an outcry of sexual abuse against her uncle to her mother, and where witnesses referred to the defendant as the offender).   Given that legally sufficient evidence supports the conviction of Akell for acts committed against Z.G. and A.G., we find that legally sufficient evidence supports Akell's identity as the perpetrator, regardless of whether A.G. positively identified Akell in the courtroom to the same extent as Z.G.   *See Gardner*, 306 S.W.3d at 285; *Baez*, 486 S.W.3d at 595; *Clark*, 47 S.W.3d at 214; *Adams*, 418 S.W.3d at 812–13.   Akell's second issue is overruled.

## CONCLUSION

Having overruled Akell's issues, we affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

December 21, 2018

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

11