

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00374-CR

Luis Arnaldo **BAEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR6881
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Jason Pulliam, Justice

Delivered and Filed:  October 14, 2015

AFFIRMED

A jury convicted appellant, Luis Arnaldo Baez, on two counts of continuous sexual abuse of two children, and the trial court assessed punishment at life in prison on each count, with the sentences running consecutive to each other.  We affirm.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, appellant challenges the legal sufficiency of the evidence in support of the jury's findings on two counts of continuous sexual abuse of the two complainants, D.I. and D.R.[1]

### A.      Elements of Offense & Standard of Review

A person commits the offense of continuous sexual abuse of a young child or children "if: (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014).

In evaluating the legal sufficiency of the evidence, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.3d 459, 461 (Tex. Crim. App. 1991). In analyzing the legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence, both

---

[1] To safeguard the privacy of the minors involved, this opinion uses initials for the two complainants, as well as for two other minor children mentioned later in this opinion.

direct and circumstantial, when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B.     The Evidence Regarding D.I.

Under Count 1, the jury charge asked the jury to determine, beyond a reasonable doubt, whether "from on or about the 1st day of October, 2007, through the 16th day of February 2009" appellant committed two or more acts of sexual abuse against D.I., "a child younger than fourteen (14) years of age . . . ." On appeal, appellant does not dispute that D.I. would have been between the ages of twelve and thirteen when the abuse alleged in the indictment occurred. Instead, on appeal, appellant asserts that D.I.'s testimony and the Sexual Assault Nurse Examiner ("SANE") report about D.I.'s age on the first and last day that she was abused was speculative; therefore, the evidence does not satisfy the thirty days or more period of abuse required under section 21.02.

At trial, Sylvia Perez,[2] testified D.I. was placed in foster care in the home of appellant and his wife on a variety of dates, including December 28, 2006 through March 3, 2009; and March 10, 2009 through March 18, 2009. D.I. testified she was born on February 17, 1995. D.I. said the first time appellant touched her was in the middle of her sixth grade of school. She said appellant touched her "often," more than ten times, more than once a week, and the abuse continued until she moved out of his house.

Annette Santos, the sexual assault nurse examiner, testified she examined D.I. when D.I. was fifteen years old. Santos said D.I. told her she went to appellant's home when she was about eight years old, and "[i]t started happening when I was 12 to 14," and the "last time [she] was 13 to 14 years old." D.I. described appellant putting his finger in her "private" and making her "suck his private part." D.I. also told Santos appellant "put his private part in [her] front private."

---

[2] At the time of trial, Perez was a detective assigned to the Bexar County Sheriff's Office, Criminal Investigation Division; and she works at ChildSafe.

On appeal, appellant contends the SANE report can be interpreted to mean that (1) all of the abuse began and ended within a thirty-day period, which included D.I.'s thirteenth birthday; or (2) during a time of thirty or more days where the thirtieth day took place after D.I.'s fourteenth birthday. According to appellant, under the first scenario the evidence would be insufficient because thirty or more days of abuse were not proven; and under the second scenario, the evidence would be insufficient because the statute requires that the second act of abuse occur before the complainant's fourteenth birthday.

The primary purpose for specifying a date in an indictment is to show that the prosecution is not barred by a statute of limitations. *See Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998). However, continuous sexual abuse has no period of limitations. TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(D) (West 2015). The Texas Legislature "created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.). "However, although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Id.*; TEX. PENAL CODE § 21.02(d) ("The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."). Also, "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.*

Based on the uncontroverted testimony that D.I. was born on February 17, 1995, she would have been between the ages of twelve and thirteen during the period alleged in the indictment (October 1, 2007 to February 16, 2009), and she lived in appellant's house during that time period.

D.I. did not give the specific dates when the instances of sexual abuse took place; however, she testified the first instance occurred when she was in the middle of her sixth grade of school, appellant touched her more than ten times, "often," more than once a week, and until she moved out of his house. Santos testified D.I. told her she went to appellant's home when she was about eight years old, and "[i]t started happening when [D.I.] was 12 to 14," and the "last time [when she] was 13 to 14 years old."

After considering all the evidence in the light most favorable to the verdict and reasonable inferences therefrom, we conclude a rational jury could have found that two or more acts of sexual abuse occurred after D.I. turned twelve years of age and before she turned fourteen years of age, and a rational jury could have found the essential elements of the crime as alleged in Count 1 beyond a reasonable doubt.

**B.     The Evidence Regarding D.R.**

Under Count 2, the jury charge asked the jury to determine, beyond a reasonable doubt, whether "from on or about the 1st day of October, 2007, through the 6th day of April 2009" appellant committed two or more acts of sexual abuse against D.R., "a child younger than fourteen (14) years of age . . . ." On appeal, appellant asserts the evidence is legally insufficient to support a finding that D.R. was under fourteen years of age when the requisite minimum two acts of sexual abuse took place; any acts of abuse that occurred before September 1, 2007, the effective date of section 21.02, are barred under the statute of limitations; and the evidence is legally insufficient to support a finding that any abuse occurred after October 1, 2007 or during a period of thirty or more days in duration.

D.R. testified she was nineteen years old at the time of trial. Perez testified D.R. was placed in foster care in the home of appellant and his wife the beginning of March 2007 through 2009. D.R. said she and her younger sister were placed in appellant's home on March 9, 2006, but then

she immediately corrected herself to state 2007. She said she was "13, going to be 14." On appeal, appellant contends that if D.R. was nineteen years old at the time of trial she could not have been "13, going to be 14" in March 2006 or 2007, but instead, either eleven (in 2006) or twelve (in 2007). Appellant also contends that if D.R. was "13, going to be 14" in March 2006, then every specifically alleged act of sexual abuse occurred before the September 1, 2007 effective date of Penal Code section 21.02. On the other hand, appellant argues, if D.R. moved into appellant's house in 2007, she only stated the move was "around" that date and she was "about right" on the 2007 date, which amounts to mere guessing.

No evidence contradicted D.R.'s testimony that she was nineteen years old at the time of trial, Perez stated D.R. was placed in appellant's home in March 2007, and, although a bit hesitant about the dates, D.R. also said she went to live with appellant and his wife in March 2007. If D.R. was nineteen on the day she testified at trial (April 10, 2014), the jury could have reasonably inferred she was born no earlier than April 11, 1994 and was, therefore, no older than thirteen years, four months, and twenty-one days on September 1, 2007 when section 21.02 became effective. Thus, at a minimum, the State had to prove continuing sexual abuse occurred between September 1, 2007 (the effective date of section 21.02) and April 11, 2008 (the earliest date D.R. would have turned fourteen).

D.R. testified she lived in appellant's house for "a year and a half," but she later stated it was for sixteen months, and Perez testified D.R. was placed in foster care in appellant's home at the beginning of March 2007 and through 2009. Therefore, the jury could have reasonably inferred D.R. lived with appellant during the relevant time period. D.R. testified repeatedly that appellant had sex with her every single day and the entire time she lived in the house. On appeal, appellant takes issue with D.R.'s use of the word "sex," arguing the word is never defined and "did not involve specific acts of sexual abuse that were described by the prosecutor during her direct

examination." Although D.R. said appellant had sex with her every single day, she was also more specific and graphic in her description of what appellant did to her and made her do to him. Also, at one point the State asked, "When you say having sex, are you talking about putting his private in your private?" and D.R. replied, "Yes." D.R. had previously said "his private part" meant appellant's penis and "her private part" meant vagina.

After considering all the evidence in the light most favorable to the verdict and reasonable inferences therefrom, we conclude a rational juror could have found the essential elements of the crime as alleged in Count 2 beyond a reasonable doubt.

## THE JURY CHARGE

Appellant was indicted on several counts of continuous sexual abuse of four children: D.I., D.R., A.D., and B.M. On the first day of trial, the State waived all counts except the two finally presented to the jury on D.I. and D.R. Although the State did not seek a conviction for continuous sexual assault of A.D. or B.M., the State offered A.D.'s and B.M.'s testimony during the guilt-innocence phase as extraneous offense evidence; however, the trial court allowed admission only of B.M.'s testimony.

The jury charge contained the following instruction:

> In this case, evidence has been introduced to the effect that there may have been an alleged act or acts of sexual misconduct between the defendant and the complainants . . . and between the defendant and another child [B.M.], other than what is alleged in the indictment. **The State has identified the specific instances, if any, on which it is relying to substantiate each of the allegations in the indictment.** Evidence of any other alleged act or acts is not to be considered unless you believe that other act or acts, if any, was or were committed beyond a reasonable doubt. **With regard to the other act or acts, if any, you are instructed that said evidence was admitted for any bearing it has on relevant matters, including the character of the defendant and such act, if any, performed in conformity with the character of the defendant, the state of mind of the**

**defendant and each complainant, and the previous and subsequent relationship between the defendant and each complainant**.[3] [Emphasis added.]

On appeal, appellant asserts the inclusion of the emphasized language above amounts to "structural" error because it instructed the jury that the State was relying on allegations of appellant's past sexual misconduct with another child, B.M.,[4] to substantiate each of the allegations in the indictment.[5]

The above instruction is based on Texas Code of Criminal Procedure article 38.37, section 2(b), which provides as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2014).

Appellant contends that by allowing extraneous offense evidence to be considered by a jury as substantive evidence of guilt, "the Texas Legislature has unleashed an evidentiary tsunami of unprecedented magnitude" because juries may now consider "extraneous offense evidence, from any source, for any purpose, including the establishment of outright guilt."[6] Appellant relies on Texas Rule of Evidence 103(e), the Court of Criminal Appeals' opinion in *Blue v. State*, 41

---

[3] This instruction in the jury charge contains slight differences in wording from the instruction as read to the jury, but none that change the nature of appellant's complaint on appeal or our analysis of his complaint.

[4] During the guilt-innocence phase of trial, B.M. testified that while she was placed into foster care at appellant's home, when she was three or four years old, appellant touched her on more than one occasion. B.M. did not know either complainant. B.M. was fourteen years old at the time of trial.

[5] At trial, appellant did not object to this instruction. Appellant argues, in the alternative, that if the error was not "structural" error, but error to which he was required to object, he was egregiously harmed by the improper instruction.

[6] Although appellant makes this broad statement regarding article 38.37, section 2(b), he does not expressly argue the article is unconstitutional. Therefore, we only consider whether the instruction contained in this jury charge amounted to structural error.

S.W.3d 12 (Tex. Crim. App. 2000), and the United States Supreme Court's opinion in *Sullivan v. Louisiana*, 508 U.S. 275 (1993) as support for his argument that he was not required to object at trial to this instruction because the error was structural.

Under Rule 103, in "criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." TEX. R. EVID. 103(e); *see also Blue*, 41 S.W.3d at 131-32 (acknowledging Rule 103 and holding that trial court's comments, "which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection").[7] In *Sullivan*, the U.S. Supreme Court held that a jury charge that misdefined the State's burden of proof as being less than beyond a reasonable doubt constitutes structural error and is never harmless error. *Sullivan*, 508 U.S. at 281-82. "[S]tructural error goes to a complete mis-direction or failure to instruct on the reasonable doubt standard . . . ." *Olivas v. State*, 202 S.W.3d 137, 143 (Tex. Crim. App. 2006) (holding failure to incorporate beyond-a-reasonable doubt burden of proof in deadly weapon issue was not structural error because jury instructions did not totally omit any reference to proof beyond a reasonable doubt, nor did those instructions mis-direct the jury concerning that burden of proof).

Appellant contends the article 38.37, section 2(b) instruction in this case amounted to *Sullivan*-error because it allowed the jury to convict by considering B.M.'s extraneous offense evidence as evidence of substantive guilt in violation of the mandate that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact

---

[7] Subsequently, the Court of Criminal Appeals has stated that *Blue* has "no precedential value," but "may nevertheless be considered for any persuasive value they [the multiple opinions] might have, in the same way as any other opinion that does not command a majority of this Court, such as a concurring opinion." *Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013).

necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). We disagree.

The jury charge here set forth the circumstances under which a person commits the offense of sexual assault of a child, aggravated sexual assault of a child, and indecency with a child by sexual contact. The charge defined "sexual assault," "sexual contact," and "penetration." The charge defined when a person acts intentionally or with intent, and knowingly or with knowledge. The jury was told, in two separate counts as to D.I and D.R., to find appellant guilty of continuous sexual abuse of a young child as charged in the indictment, if the jury unanimously found "from the evidence beyond a reasonable doubt" that appellant committed two or more of six specifically listed acts[8] during a period that was thirty days or more in duration. The language in the complained-of instruction stating "[t]he State has identified the specific instances, if any, on which it is relying to substantiate each of the allegations in the indictment," referred to these six specific instances of alleged acts listed in each count for D.I and D.R.

The jury also was instructed that "[a]ll persons are presumed innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." The jury was instructed that the State bore the burden "of proving [appellant] guilty and *it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the [appellant]."* [Emphasis added.]

During closing arguments, the State told the jury it had the burden to prove appellant committed two or more acts of sexual abuse against D.I. under Count 1 and two or more acts of

---

[8] For example, one of the six specific instances of abuse alleged against appellant under each count was as follows: "[Appellant] intentionally or knowingly caused the penetration of the female organ of [complainant], a child younger than 14 years of age, with the male sexual organ of [appellant.]"

sexual abuse against D.R. under Count 2. As to B.M's testimony, the State told the jury it could use her testimony as follows:

> And when you believe beyond a reasonable doubt that [B.M.] is telling you the truth, when you believe he sexually assaulted [B.M.], you can then say because he sexually assaulted B.M., he sexually [assaulted D.R.] and he sexually assaulted D.I. You can say he acted in conformity with his character. He sexually assaulted her; he sexually assaulted those two [D.I. and D.R.]. That is how you use [B.M.'s] testimony.

We conclude the jury charge here properly informed the jury that the State had to prove the elements of each offense, the charge set forth those elements as to D.I. and D.R., and the jury was instructed it could vote to convict only if it determined, beyond a reasonable doubt, that appellant committed two or more of six specifically listed acts during the relevant time period as to D.I. and D.R. The complained-of instruction did nothing more than inform the jury that it could consider B.M.'s testimony for any bearing it had on relevant matters, including "the character of the defendant and such act, if any, performed in conformity with the character of the defendant, the state of mind of the defendant and each complainant, and the previous and subsequent relationship between the defendant and each complainant." Therefore, we conclude the inclusion of this instruction did not mis-direct the jury as to the State's burden of proof and did not amount to "structural" error for which no harm analysis is necessary. We also conclude the trial court did not err in including this instruction in the jury charge; therefore, we do not conduct a harm analysis.

## EX POST FACTO LAW

In an issue somewhat related to his *Sullivan*-error issue, appellant asserts his conviction must be reversed because article 38.37, section 2(b) violates the ex post facto provision of the United States Constitution. An ex post facto law is any law passed "after the fact" or commission of an act, that retrospectively changes the consequences of such act. *Grimes v. State*, 807 S.W.2d 582, 583-84 (Tex. Crim. App. 1991).

The U.S. Supreme Court has set out four types of ex post facto laws, two of which appellant relies on in this appeal: (1) every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; and (2) every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. *Calder v. Bull*, 3 U.S. 386, 390 (1798). The Texas Legislature added section 2(b) to article 38.37 when it amended the article on September 1, 2013. According to appellant, prior to the addition of section 2(b), evidence of sexual offenses that were offered as extraneous evidence were allowed only for a limited purpose of showing the state of mind of the defendant and the child-victim of the alleged offense; and (2) the previous and subsequent relationship between the defendant and the child-victim of the alleged offense. Now, with the addition of section 2(b), appellant argues, extraneous offense evidence may be offered as substantive evidence of guilt.

For the reasons stated above, we do not believe section 2(b) makes an action done before September 1, 2013, and which was innocent when done, criminal or punishable because section 2(b) does not allow extraneous offense evidence to be offered as substantive evidence of guilt. The State must still satisfy its burden of proof as to each element of the offense. Similarly, we do not agree that section 2(b) alters the legal rules of evidence to allow less or different testimony than the law required at the time of the commission of the offence in order to convict the defendant.

"Article 38.37, section 2(b) allows testimony regarding other extraneous offenses to show character conformity." *Dominguez v. State*, No. 04-13-00789-CR, 2015 WL 1939378, at \*4 (Tex. App.—San Antonio Mar. 25, 2015, pet. filed). "The statute neither changes the State's burden of proof to support a conviction for sexual assault of [a] child nor lessens the amount of evidence required to sustain a conviction." *Id.*; *McCulloch v. State*, 39 S.W.3d 678, 683-84 (Tex. App.—Beaumont 2001, pet. ref'd) (same). "Indeed, the quantum of evidence remains the same both

before and after the enactment of article 38.37. No element is eliminated from the offense to be proved; neither is the amount or measure of proof necessary for conviction reduced, altered, or lessened." *McCulloch*, 39 S.W.3d at 684. "The statute simply provides that a specific type of evidence will be admissible on certain relevant matters, notwithstanding Rules 404 and 405." *Id.* "Before article 38.37, the child victim's testimony concerning prior 'acts' committed by the defendant against the child was not admissible unless such evidence fell within an exception under Rule 404(b)." *Id.* "In removing the restrictions on that testimony, the statute enlarges the scope of the child's admissible testimony, but leaves untouched the amount or degree of proof required for conviction." *Id.* "In short, article 38.37 eliminates the necessity of showing the evidence falls within one of the Rule 404(b) exceptions. In that sense, it relaxes the strictures associated with Rule 404(b), but, in no way does it alter the quantum of proof required by law to support the conviction." *Id.*

For these reasons, we cannot conclude an ex post facto violation occurred.

## NOTICE OF EXTRANEOUS OFFENSE EVIDENCE

Article 38.37 requires the State to "give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial." TEX. CODE CRIM. PROC. art. 38.37, § 3. In his final issue on appeal, appellant asserts the trial court erred by conducting an admissibility hearing on B.M.'s testimony in the absence of allowing him a thirty-day continuance.

As stated above, on the first day of trial, before jury selection, the State waived all counts except the two finally presented to the jury on D.I. and D.R. Defense counsel then asked for a hearing regarding two other complainants (named in the waived counts) because the State intended to offer their testimony as extraneous offense evidence. Defense counsel asked for the hearing on

the grounds that the testimony "may affect how the defense proceeds with voir dire." The trial court granted the request to conduct the hearing prior to jury selection.

When the trial court and counsel reconvened for the hearing, defense counsel stated the defense was entitled to thirty days' notice under article 38.37. Although counsel conceded he knew about the allegations involving the two other complainants ("We had that notice."), counsel insisted he was also entitled to thirty days' notice for the purpose of having adequate time to prepare for the extraneous offense admissibility hearing. The court denied the verbal motion for a continuance. Following the admissibility hearing, the trial court excluded the testimony of one of the other complainants and allowed the testimony of the other complainant (B.M.).

We will assume, without deciding that the trial court erred by refusing defense counsel's request for a continuance, and analyze whether appellant was harmed under Texas Rule of Appellate Procedure 44.2(b), which provides that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b).

At trial, defense counsel had notice of the two other complainants and the allegations these two girls made against appellant. However, counsel asserted he did not have time to prepare certain witnesses for the purpose of calling them to testify at the admissibility hearing. On appeal, appellant contends his substantial rights were affected because his attorney was denied adequate time to respond to the State's efforts to introduce B.M.'s extraneous offense evidence at trial. Appellant contends his attorneys were "forced to think on their feet, and basically, defend by reaction."

The record fairly reflects that defense counsel was prepared to defend this case based on an indictment that included (1) nine counts of abuse of D.I.; (2) eight counts of abuse of D.R.; (3) seven counts of abuse of B.M.; and (4) six counts of abuse of A.D. On the first day of trial, before jury voir dire, the State waived seven of the counts against D.I., seven of the counts against D.R.,

and all of the counts against B.M. and A.D. Defense counsel has not argued there were additional witnesses or other evidence he was unable to procure because the continuance was denied. Case-law requires more than speculation to justify an appellate reversal of a case for a trial court's failure to grant a continuance. *See Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995) (bare assertion that counsel did not have enough time to interview potential witnesses does not alone establish prejudice); *Wilson v. State*, 195 S.W.3d 193, 198 (Tex. App.—San Antonio 2006, no pet.) (bare assertion that counsel did not have adequate time to prepare for trial not proof of prejudice).

On this record, we hold that defense counsel did not make the required showing of specific prejudice from the denial of a continuance; therefore, we are unable to conclude appellant's substantial rights were affected.

## CONCLUSION

We overrule appellant's issues on appeal, and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

Publish