**Affirmed; Opinion Filed December 30, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01091-CR

**TASHA LEANA LOMOGLIO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-82533-2016**

## MEMORANDUM OPINION

Before Justices Whitehill, Osborne, and Nowell
Opinion by Justice Nowell

A jury convicted Tasha Leana Lomoglio of continuous sexual abuse of a child under the age of 14 and sentenced her to twenty-seven years' incarceration. In two issues, appellant argues the trial court abused its discretion by failing to order a competency evaluation and the evidence is insufficient to support her conviction. We affirm the trial court's judgment.

### A. Competency

In her first issue, appellant asserts the trial court abused its discretion by failing to order a competency evaluation after the question of her competency was raised on the morning of the fourth day of trial.[1] As a matter of constitutional due process, a criminal defendant who is

---

[1] Although appellant's competency was raised again before the punishment stage began, appellant does not complain on appeal about the trial court's handling of that matter. Appellant's argument in her first issue is limited to the trial court's decision not to order a competency evaluation on the fourth day of trial.

incompetent may not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). The constitutional standard for competency to stand trial is codified in the statutory scheme set forth in article 46B of the Texas Code of Criminal Procedure, which describes the circumstances that require and the procedures for making a determination of whether a defendant is competent to stand trial. *See* TEX. CODE CRIM. PROC. arts. 46B.001–.055.

Procedurally, a trial court employs a two-step process for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial: the first step is an informal inquiry; the second step is a formal competency trial. *Boyett*, 545 S.W.3d at 563. "An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Id.*; *see* TEX. CODE CRIM. PROC. art. 46B.004(a), (c), (c-1).

Substantively, incompetency to stand trial is shown if a person does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." *Boyett*, 545 S.W.3d at 563 (*quoting* TEX. CODE CRIM. PROC. art. 46B.003(a)). The Court of Criminal Appeals has noted that the fact a defendant is mentally ill does not by itself mean he is incompetent. *See Turner v. State*, 422 S.W.3d 676, 691 (Tex. Crim. App. 2013). The inquiry is whether a defendant's mental illness "operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests." *Id.* "Evidence that raises this possibility necessitates an informal inquiry. . . ." *Id.* "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. art. 46B.003(b).

At the informal inquiry, there must be "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Boyett*, 545 S.W.3d at 563 (quoting

–2–

TEX. CODE CRIM. PROC. art. 46B.004(c)).  If that requirement is met, the trial court must order a psychiatric or psychological competency examination, and, except for certain exceptions, must hold a formal competency trial.  *See id.*; *see* also TEX. CODE CRIM. PROC. arts. 46B.005(a), (b), 46B.021(b).

At 10:37 p.m. after the third day of trial, appellant was admitted to Mayhill Hospital, a behavioral health facility.  A letter from Mayhill stated only that appellant was admitted "for behavioral health services."  Appellant's counsel informed the trial court that, prior to being admitted to Mayhill, his client informed him she was experiencing auditory hallucinations and she believed she needed to admit herself to a psychiatric facility.  Appellant's counsel did not know whether she was admitted voluntarily or whether she had capacity.  Appellant's counsel and the State informed the trial court that, based on documents from 2012 through 2015, appellant previously experienced psychotic episodes resulting from drugs, bipolar disorder, and schizophrenia.  The trial was held in September 2018.  The State told the trial court that nothing in appellant's medical history indicated she had ever been found incompetent or criminally insane. Appellant was not present on the morning of the fourth day of trial.

The trial judge concluded the only credible information before the Court was appellant's counsel's report that his client told him she experienced auditory hallucinations and intended to voluntarily admit herself to a psychiatric facility.  The judge stated:

> In my opinion, that information or evidence alone is not sufficient to trigger the 2(b)[2] hearing because that information about whether she is hearing voices or having auditory hallucinations does not indicate in any manner an inability to consult with her counsel with a reasonable degree of rational understanding, nor is it any indication whatsoever that she lacked a rational and factual understanding of the proceedings. Everything that I observed during the trial up until that point indicated to me that she did have the ability to both consult her lawyer and that she had an understanding of the proceedings. So in my opinion the evidence before the

---

[2] The judge's reference to "2(b)" appears to reference the former Texas Code of Criminal Procedure article 46.02 §2(b), which addressed competence to stand trial.

court does not present more than a scintilla of evidence that would rationally lead to the conclusion that she is not competent at this time.

The trial court judge continued: "And I do agree that based on this informal inquiry, there is - - there is insufficient indicia of incompetency to proceed any further."

The record does not show any evidence was presented at the informal hearing indicating appellant could not consult with her attorney or did not understand the proceeding against her. The only evidence before the trial court was that appellant voluntarily went to a behavioral health facility and she told her lawyer the reason for doing so was because she experienced auditory hallucinations the previous night. Assuming she was experiencing auditory hallucinations, that alone does not show appellant lacked capacity to stand trial. Based on this record, we cannot conclude the trial court abused its discretion by failing to order a competency evaluation following the informal inquiry. We overrule appellant's first issue.

## B. Sufficiency of the Evidence

In her second issue, appellant argues the evidence is insufficient to support her conviction because the State failed to prove the sexual abuse occurred over a period of thirty or more days. We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the

verdict. *Id.* When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

As applicable in this case, a person commits continuous sexual abuse of a child if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse and, at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age. TEX. PENAL CODE § 21.02(b). The testimony of a child victim without any corroboration will support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. art. 38.07; *Delbrey v. State*, No. 05-18-00790-CR, 2019 WL 3773851, at *3 (Tex. App.—Dallas Aug. 12, 2019, no pet.) (mem. op., not designated for publication); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd) (uncorroborated child victim testimony sufficient to support conviction for sexual assault).

Appellant is the mother of the complaining witness, I.L., and I.L.'s brother. After appellant and I.L.'s father divorced, appellant initially had extended standard visitation with her children, which meant the children spent the first, third, and fifth weekends of each month with her. This custody arrangement existed from 2014 until March 2015 when appellant was allowed only supervised visitation after she refused to return the children following a scheduled visit.

I.L. testified that she was nine years old at the time of trial. I.L. calls appellant "Tasha" and explained that appellant was "my mom five years back, kind of, whenever I was a little baby." I.L. testified she did not like when appellant touched her "private parts," which I.L. defined as

"[m]y breasts, my butt, and my vagina."[3]  I.L. testified appellant touched her vagina and butt "a lot" of times.

I.L. testified about a day when appellant picked her up from school and took I.L. and her brother to appellant's apartment.  Appellant called I.L. into appellant's bedroom and instructed I.L. to sit on the bed where I.L. fell asleep.  I.L. was wearing underwear and pants when she fell asleep.  However, when she awakened, the clothes were on the floor and appellant was using her finger to touch the outside of I.L.'s butt.  I.L. testified appellant initially touched the "outside part and later the inside part."

Appellant then turned I.L.'s body so I.L. was lying on her back and began moving her finger over I.L.'s private parts.  The following exchange occurred during I.L.'s testimony:

> Q. Now when we talk about a vagina or we talk about your privates, you know how a girl's privates have kind of two parts on the outside and there's a line in the middle, where was her finger?
> A. She did both.
> Q. She did both what?
> A. Inside and outside.
> Q. Inside the line as well as outside the line, like the two folds and then the line?
> A. Yes.

I.L. felt as though appellant "was just touching all over [her vagina]."  I.L. then got out of the bed and left the bedroom.

I.L. testified appellant touched her private parts at other times, explaining: "One time it was just my butt, one time it was just my vagina, one time it was just both, it was like a schedule that happened. . . . Like one time it was one thing, one time it was the other thing, one time it was both and it just kept going on."  I.L. testified the incidents were "spread out like every time I came to visit her."

---

[3] We will use the same terms that I.L. used to describe her body parts.

Eli Molina, a forensic interviewer at the Children's Advocacy Center of Collin County, interviewed I.L. on April 28, 2016, when I.L. was seven years old. Molina determined I.L. was making a delayed outcry. During the interview, I.L. disclosed that, when she was five years old, appellant touched I.L.'s vagina and butt with appellant's finger and appellant kissed I.L. on her vagina. Molina testified:

> From what she described, it would have been chronic abuse, something that happened more than one time. A lot of time in children when they experience chronic abuse, not only, if it's something that happened more than one time, do they begin to merge the times together, so it's difficult for them to differentiate when one abuse occurred to the other . . .

The jury saw a forty-five-minute video of Molina's forensic interview with I.L. The video shows I.L. telling Molina that Tasha touched her private parts several times. I.L. told Molina that when appellant touched I.L.'s vagina, I.L. felt as though she needed to go to the bathroom.

Appellant argues the evidence is insufficient to show there were two or more instances of sexual abuse that extended over a thirty-day period of time. However, I.L. testified the touching happened "a lot", the incidents were "spread out like every time I came to visit her," and "one time it was one thing, one time it was the other thing, one time it was both and it just kept going on." Other evidence showed I.L. visited appellant's apartment the first, third, and fifth weekends of each month for several months before the visits became supervised. Additionally, Molina testified the abuse was chronic and happened more than once and a child such as I.L. may have difficulty differentiating one incident from another when asked to recall the incidents later. The legislature recognized this issue when it drafted the statute; this Court previously recognized "[t]he legislature created the offense of continuous sexual abuse of a young child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Srader v. State*, No. 05-15-01272-CR, 2016 WL 6161630, at *2 (Tex. App.—Dallas Oct. 24, 2016, no pet.) (mem. op., not designated for

publication) (citing *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2016, pet. ref'd)).

Viewing the evidence in the light most favorable to the verdict, we conclude any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, including that that during the months before appellant's visitation became supervised, appellant committed acts of sexual abuse every time I.L. was at her residence, which was a period of thirty days or more. *See Paez v. State*, No. 13-16-00429-CR, 2018 WL 3910023, at *5 (Tex. App.— Corpus Christi Aug. 16, 2018, pet. ref'd) (mem. op., not designated for publication); *Williams v. State*, 305 S.W.3d 886, 890 (Tex. App.—Texarkana 2010, no pet.). We overrule appellant's second issue.

## C. Conclusion

We affirm the trial court's judgment.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181091F.U05

—8—



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

TASHA LEANA LOMOGLIO, Appellant

No. 05-18-01091-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 380-82533-2016.
Opinion delivered by Justice Nowell.
Justices Whitehill and Osborne
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of December, 2019.