

# NUMBER 13-22-00441-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ISRAEL DAVILA JR.,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                  **Appellee.**

## ON APPEAL FROM THE 214TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Benavides**

Appellant Israel Davila Jr. appeals his conviction for continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b). Davila was sentenced to thirty-five years' imprisonment. By a single issue, Davila contends the evidence to support his conviction was legally insufficient. We affirm.

## I. BACKGROUND

On June 25, 2021, a grand jury indicted Davila on: (1) three counts of indecency with a child; (2) one count of aggravated sexual assault of a child; and (3) one count of continuous sexual abuse of a child under fourteen. *See id.* §§ 21.02(b), 21.11(a)(1–2), 22.021(a)(2)(B). A jury trial commenced on September 19, 2022.

S.G. (Savannah)[1] testified that Davila was her ex-husband. The two married on March 9, 2012, and divorced in August of 2020. S.G. (Sasha), Savannah's oldest daughter, Davila's former stepdaughter, and the complainant in this case, was born in the summer of 2007. Savannah testified that while the family was living in a home on Elizabeth Street in Corpus Christi, Sasha developed a rash on her sexual organ. Pursuant to a physician's recommendation, Savannah instructed Sasha on personal hygiene and informed her that she and Davila would be periodically checking her vaginal area to ensure she was practicing good personal grooming habits. Savannah testified that Davila checked on Sasha "just once," and she checked on Sasha "between three and five times." After this, Savannah was satisfied that the checks were unnecessary as Sasha "understood how to do it and could do it on her own." Savannah testified that Davila was made aware at a certain point that the hygiene checks were no longer necessary. However, in May of 2019, after Davila and Savannah had a fight, Sasha, who was eleven at the time, informed Savannah that Davila had continued examining Sasha under the guise of performing hygiene checks. Savannah reported this outcry to police.

---

[1] We have assigned a pseudonym to the complainant to protect her privacy. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"). To further protect her identity, we will refer to the complainant's mother as Savannah. *See id.*

Sasha was fifteen at the time of her testimony. Sasha recalled that when she was "around the age of eight or seven," her mother and Davila had a conversation with her about personal hygiene. At the time, the family was living on Elizabeth Street. Sasha testified that she was in the "[t]hird and fourth" grades at the house on Elizabeth Street, which she explained meant she was "[e]ight in the third grade and nine in the fourth" grade. After Elizabeth Street, the family moved to a house on Southern Street in Corpus Christi. Sasha "was ten" at this house.

Sasha remembered that Savannah only checked her vaginal area once. However, although Davila "definitely" performed more than one check at the Elizabeth Street home, Sasha recalled that he performed the checks "way more" at the Southern Street home. During these checks, Davila "put his hands in between [Sasha's] lips and started moving things around. Kind of looking around in the area."

At some point, Sasha told Davila that she did not want him to examine her vagina anymore. In response, "[m]ost of the time he just asked [Sasha] if [she] needed money or wanted a toy from a store or the candy store or the convenience store right next to [their] house." Sasha testified that during one incident, Davila offered her twenty dollars and asked, "[H]ow about instead you come and look at my junk instead of doing normal check ups." Then, Davila went into the shower and showed Sasha "his junk." Sasha described another incident during which Davila was driving and asked Sasha to "pull [her] shorts down." When Sasha complied, Davila "put his hands between [her] legs."

After her outcry, Sasha was taken to the local Children Advocacy Center for a forensic interview on May 7, 2019. A recording of that interview was admitted into

3

evidence. In the interview, Sasha explained these "examinations" occurred "once every two weeks." Sasha told the interviewer that "even when [she] was clean, [Davila] would still check, and he would do it even longer." Sasha relayed that she "didn't like any of this," "felt uncomfortable," and "just wanted it to be over with." Sasha relayed that sometimes Davila would say, "Maybe if you help me out, I can help you out." Sasha understood this to mean that, in exchange for buying her toys or providing her with money, Davila would perform an examination of her vagina. During the interview, Sasha explained that she believed the incident that occurred while Davila was driving took place around her tenth birthday, because she remembered Davila mentioning that she was "double digits" at that point.

Sasha was also taken to Driscoll Children's Hospital for a sexual assault exam. The medical records from that exam were admitted into evidence. In the records, a nurse noted that Sasha stated:

> "It started in my old house when my friend came over like 2 years ago. We were outside playing on the trampoline when I went inside to get a lollipop. . . . Davila asked what would I give him if he gave me a lollipop. Then when my phone got taken away he would tell me sometimes he would give it back to me if I showed him my girl part . . . . Sometimes he would just look at it . . . , sometimes he would open it with his fingers, and then sometimes he would stick his finger in it, but just a little bit. . . . He only looked at it and put his finger in a couple of times but he opened it with his fingers more th[a]n 20 times.["]

Sasha also informed the nurse that the most recent act of sexual abuse occurred two weeks prior to the exam, which would have been around mid-April of 2019.

Davila testified that the family moved into the house on Elizabeth Street "around Thanksgiving of 2015" and moved out in "March or April of 2018." Davila explained that,

4

while the family was living on Elizabeth Street, he would check Sasha's vagina to ensure she was cleaning properly. Davila could not recall how many checks he performed or whether the checks continued when the family moved to the house on Southern Street.

The jury found Davila guilty of: (1) continuous sexual abuse of a child, (2) aggravated sexual assault of a child, and (3) two counts of indecency with a child. It found Davila not guilty on one count of indecency with a child. After Davila was convicted, the parties reached an agreement to dismiss all charges except for the continuous sexual abuse charge. The agreement provided that Davila would be sentenced to thirty-five years' imprisonment on that charge and would maintain his right to appeal. The trial court entered a judgment consistent with the parties' agreement. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his sole issue, Davila argues the evidence was insufficient to establish that two or more acts of sexual abuse occurred "during a period that [wa]s 30 or more days in duration." *See id.* § 21.02(b).

### A.    Applicable Law & Standard of Review

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the

5

defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). In reviewing the sufficiency of the evidence, we consider all the evidence presented in the light most favorable to the verdict to determine whether the factfinder was justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

A person commits the offense of continuous sexual abuse of a child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(b). As relevant here, "acts of sexual abuse" include engaging in indecency with a child by sexual contact. *Id.* §§ 21.02(c)(2), 21.11(a)(1). As such, if committed with the intent to arouse or gratify the sexual desire of any person, any touching of a child's genitals constitutes a predicate act of sexual abuse under the continuous sexual abuse of a child statute. *Id.* §§ 21.02(c)(2), 21.11(c)(2).

The uncorroborated testimony of a child victim is by itself sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a). Additionally, "[c]hild victims of sexual crimes are afforded great latitude when testifying and they are not expected to testify with the same clarity and ability as is expected of a mature and capable adult." *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd). "The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.).

**B.      Analysis**

Davila challenges the sufficiency of the evidence to show that the acts committed occurred over a period of thirty days or more, as the acts Sasha described were "insufficiently dated." The "legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd) (quoting *Mitchell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.)). "[J]ust as the legislature anticipated, children often use life events rather than specific dates to define the period of continuous abuse." *Perez v. State*, No. 13-22-00292-CR, 2024 WL 715326, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 22, 2024, no pet. h.).

Here, Sasha used the windows of time that she lived on Elizabeth Street and on Southern Street as reference points for when the acts of abuse occurred. Sasha explained that she was eight and nine while living on Elizabeth Street and that she was ten when she lived on Southern Street. Sasha testified that the inspections occurred more frequently at the house on Southern Street than the house on Elizabeth Street, but that Davila "definitely" performed more than one inspection at the house on Elizabeth Street. And Davila testified that the family moved out of the house on Elizabeth Street in March or April of 2018.

In her forensic interview, Sasha told the interviewer that these acts occurred approximately once every two weeks, and that she believed the incident where Davila

7

touched her while he was driving occurred around her tenth birthday, which would have been in the summer of 2017. The nurse who conducted the medical exam noted that Sasha reported that Davila "opened" her "girl part . . . . with his fingers more th[a]n 20 times" and that the last act of sexual abuse happened two weeks prior to the exam, which would have been in mid-April of 2019. *See Garrett v. State*, No. 14-22-00328-CR, 2023 WL 5111102, at *3 (Tex. App.—Houston [14th Dist.] Aug. 10, 2023, pet. ref'd) (explaining that the jury was permitted to make the inferential leap that the third act of sexual abuse involved penetration despite the complainant not explicitly testifying that it did, as the complainant testified that the first two acts of abuse were similar and involved penetration). Because we view the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to show that two predicate acts of sexual abuse occurred at least thirty days apart. *See id.* at *1–2, *4 (concluding the evidence was legally sufficient to show that two predicate acts occurred at least thirty days apart when the complainant testified the first incident occurred "in early November 2017" and the last incident occurred "at the beginning of December" 2017); *Perez*, 2024 WL 715326, at *4 (concluding that evidence was sufficient to sustain conviction for continuous sexual abuse of a child when child victim used siblings' births to demarcate the periods of abuse); *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (finding evidence of continuous sexual abuse sufficient where the complainant testified that the abuse began in the middle of sixth grade and ended when she moved out of the defendant's house).

Davila argues that "[r]easonable doubt [was] conclusively shown regarding all the allegations." Davila bases this argument on inconsistencies in Sasha's statements, evidence that Sasha wanted Davila out of her family's life, and evidence that Sasha's mother was seeking custody of the child she shared with Davila. Based on the jury's verdict, it clearly believed Sasha's account over Davila's. It is not our place to second-guess that credibility determination. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Accordingly, we conclude that the evidence was legally sufficient to support Davila's conviction for continuous sexual abuse of a child.

As a sub-issue, Davila argues that the evidence was insufficient as "[t]ouching the sexual organ of a child as part of a necessary medical examination by an authorized adult is neither a sexual assault [n]or indecency." It is a defense to prosecution for sexual assault "that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party." TEX. PENAL CODE ANN. § 22.011(d). Here, the jury charge on continuous sexual abuse of a child contained an instruction mirroring this language. Thus, the jury implicitly determined that the medical care defense was disproven. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

In reviewing the sufficiency of the evidence to rebut a defense (rather than an affirmative defense), "[w]e do not look at whether the State refuted the defensive theory, but whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact . . . could have found against the defensive theory beyond a reasonable doubt." *Fountain v. State*, 604 S.W.3d 578, 583 (Tex. App.—Houston [14th

9

Dist.] 2020, no pet.). Savannah testified that, at a certain point while living at the Elizabeth Street house, the hygiene checks became unnecessary, and Davila was made aware that the checks were unnecessary. Sasha testified that Davila's demeanor changed at a certain point when he was performing the checks, and that he would often bribe her or ask her to "help [him] out" to convince her to let him view and touch her sex organ. This evidence supports an inference that Davila's examinations of Sasha's sex organ were for his own gratification, rather than to provide her with necessary medical care. Accordingly, the evidence was legally sufficient to rebut the defendant's medical care defense. *See id.*; *Kirk v. State*, 421 S.W.3d 772, 780–81 (Tex. App.—Fort Worth 2014, pet. ref'd).

We overrule Davila's sole issue on appeal.

### III.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of April, 2024.