

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

No. 08-25-00044-CR

Daniel A Gomez, Appellant

v.

The State of Texas, Appellee

On Appeal from the 144th District Court
Bexar County, Texas
Trial Court No. DC2023CR10519

## MEMORANDUM OPINION[1]

Daniel A. Gomez appeals his conviction for continuous sexual abuse of a child. For the reasons below, we affirm.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Gomez was in a relationship with S.G.'s mother and lived with S.G.'s family from 2010, when S.G. was eight months old, until 2017.[2] S.G. believed that Gomez was her father. In 2020 or 2021, after Gomez moved out, S.G. told her mother that Gomez had raped her. S.G.'s mother called and confronted Gomez with the allegation, which he denied. S.G. then told her mother that she had only dreamt the sexual abuse because, as she later testified, she did not want to get anyone into trouble. After some time, S.G. made a second outcry to her mother and her mother called the police. Gomez was indicted for continuous sexual abuse of S.G., a child younger than 14 years old, occurring between November 1, 2013, and September 11, 2017.[3]

S.G., who was 15 years old at the time of trial, testified that Gomez sexually assaulted her numerous times beginning when she was around three to five years old until she was seven or eight. She said that Gomez touched her vagina and chest, vaginally penetrated her, and made her perform oral sex. When asked to describe specific instances of abuse, she said "[t]here's just so many" but she was able to describe four different incidents for the jury.

Also testifying at trial was S.G.'s younger brother who said that when he was three or four years old, he witnessed Gomez sexually abusing S.G. Other witnesses corroborated S.G.'s testimony or described law enforcement's response. S.G.'s mother testified about the outcries S.G. made to her. A San Antonio police officer and detective testified about the San Antonio Police Department's investigation of the report of sexual assault. Forensic interviewer Sam Abrego testified that in her interview, S.G. disclosed abuse by Gomez—specifically hand to genital contact, hand to breast contact, and genital-oral contact. The medical records from S.G.'s exam by

---

[2] To protect her privacy, we refer to the victim by her initials. Tex. R. App. P. 9.10(a)(3) (sensitive information includes the name of a person who was a minor at the time of the offense).

[3] At the beginning of trial, the State waived a second count of sexual contact.

a sexual assault nurse examiner (SANE) were admitted into evidence and contained the history of abuse as reported to them by S.G. Lastly, the child abuse pediatrician testified about the reasons children often make delayed outcries, the sensory details that S.G. provided when she described the abuse, and, as is common in sexual abuse cases, that S.G. had no physical signs of sexual abuse. The jury found Gomez guilty of continuous sexual abuse of a young child and the trial court sentenced him to 45 years.

In Gomez's sole issue on appeal, he argues that the evidence was legally insufficient to support his conviction because there was no evidence "of a specific date of . . . sexual abuse allegedly occurring."

## II. ANALYSIS

### A. Standard of review

In a legal sufficiency challenge, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must determine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence[.]" *Id.* at 17. But it is the role of the jury to weigh the evidence and determine the credibility of witnesses and we must defer to that determination. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc).

### B. Continuous sexual assault of a child

To establish the offense of continuous sexual assault of a child, the State must prove that "during a period that is 30 or more days in duration, the person [who is at least 17 years old]

3

commits two or more acts of sexual abuse" against a child younger than 14 years old. Tex. Penal Code Ann. § 21.02(b). Gomez argues that the evidence was legally insufficient because there was no evidence that he abused S.G. on November 1, 2013 and September 11, 2017, the dates alleged in the indictment. However, requiring such specificity would defeat the purpose of the statute.

In a 2006, before the enactment of § 21.02, Judge Cochran recognized the evidentiary obstacles to prosecuting child sexual assault cases when the victims were repeatedly abused but "too young to be able to differentiate one instance of sexual exposure, contact, or penetration from another" *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006) (Cochran, J., concurring). As she explained, the Texas Penal Code at that time did not "easily accommodate the prosecution of generic, undifferentiated, ongoing acts of sexual abuse of young children" because the statutes were "intended to prosecute a person who commits one discrete criminal offense at one discrete moment in time." *Id.* at 737. She proposed a solution: "Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime—a sexually abusive relationship that is marked by a pattern or course of conduct of various sexual acts." *Id.*

The following year, the legislature took Judge Cochran's recommendation and established the offense of continuous sexual assault of a young child to "better accommodate the testimony of young children, who are not able to testify about time, place and specific number of incidents of sexual abuse in the same manner as an adult." House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. HB 436, 80th Leg., R.S. (2007); Acts 2007, 80th Leg., ch. 593, § 1.17, eff. Sept. 1, 2007. In keeping with the purpose of § 21.02, the State does not need to prove, and the jury does not need to agree on, the exact dates of abuse. Tex. Penal Code § 21.02(d) ("members of the jury are not required to agree unanimously on . . . the exact date when those acts were committed.");

4

*see also Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd). So long as the evidence shows that the defendant committed at least two acts of abuse over a period of 30 days or more, the evidence is sufficient to support a conviction. *Baez*, 486 S.W.3d at 595.

To meet the elements of § 21.02, the State can offer evidence from which a general time period can be inferred. "[C]hildren often use life events rather than specific dates to define the period of continuous abuse." *Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.); *see also Wishert v. State*, 654 S.W.3d 317, 328–29 (Tex. App.—Eastland 2022, pet. ref'd) (victim's testimony about "other benchmarks" supported finding that sexual abuse spanned more than 30 days). For example, a victim's testimony about his or her age or grade in school when the abuse occurred is evidence of the approximate date of the abuse. *See, e.g., Baez*, 486 S.W.3d at 595 (victim testified she was in sixth grade when abuse began); *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (victim testified defendant abused her from when she was six or seven years old until she was ten years old); *Michell v. State*, 381 S.W.3d 554, 560–64 (Tex. App.—Eastland 2012, no pet.) (child told forensic interviewer the season of the year and the grade she was in when she was abused) *Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026, at *4 (Tex. App.—Dallas May 22, 2018, pet. ref'd) (mem. op., not designated for publication) (victim testified that abuse started when she was seven years old and in the second grade). It is also common for children to use the births or ages of siblings to date an event. *Smith v. State*, 340 S.W.3d 41, 49 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (using ages of siblings to describe general dates of abuse); *Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (victim "used the births of her sisters to describe the period of sexual abuse"). Similarly, a jury can infer that a child was abused two or more times based on a child's imprecise testimony. *See, e.g., Buxton*, 526 S.W.3d at 676 (victim could not distinguish

between different incidents, but said that she was abused several times a week); *Baez*, 486 S.W.3d at 495 (victim testified that the abuse happened more than once a week); *Lewis v. State*, No. 02-16-00179-CR, 2017 WL 2686325, at *8 (Tex. App.—Fort Worth June 22, 2017, pet. ref'd) (mem. op., not designated for publication) (witness testified that the abuse occurred "over and over," "every day," "more than ten times," and "over a long time" and "nothing about [her] testimony suggests that the acts of sexual abuse were of a limited duration or occurred within a narrow window of time").

### C. Application

In this case, S.G. defined the date range of the abuse using her age, grade, her sister's birth, and the date Gomez moved out of the home. S.G. testified that she was in Head Start and was three, four, or five years old when Gomez started sexually assaulting her. As she was born in October 2009, her testimony dates the abuse sometime between 2012 to 2015. She also said that her little sister, who was born in April 2015, was not yet born when the abuse started. S.G.'s brother said that he was three or four years old when he witnessed Gomez sexually assaulting S.G. Since he was born in September 2011, the incident he saw would have been sometime between 2014 and 2016. Finally, S.G. stated during her SANE exam and her testimony at trial that she was seven or eight years old when Gomez moved out of the home and the abuse stopped. S.G.'s mother corroborated that time period when she testified that Gomez moved out in 2017. Therefore, even the smallest timeframe of abuse that can be inferred from the evidence (2015 to 2017) was more than 30 days. Moreover, the evidence supported the finding that Gomez committed two or more acts of abuse during that time. S.G. testified about four specific instances of abuse and stated that there were many more. She said that Gomez assaulted her by vaginal penetration "[w]ay more than

6

one time . . . [a]round ten times, at least" and that he made her perform oral sex on him between five and ten times.[4]

A rational juror could reasonably find from this evidence that Gomez committed two or more acts of sexual abuse within a period of thirty days or more. We overrule Gomez's sole issue.

## III. CONCLUSION

We hold that the evidence was legally sufficient to support Gomez's conviction. The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

November 6, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

[4] In his brief Gomez implies that S.G.'s testimony is not credible not only as it related to the timeframe of the abuse, but also to the abuse itself. He challenges S.G.'s testimony because she could not remember other details of her life when she was three to five years old (such as her teacher's and friend's names and how many hours she was in school), because she initially recanted her outcry, because she made the outcry only after learning that Gomez was not her biological father, and because she did not tell trusted adults at the time of the abuse. To the extent that Gomez is arguing that the evidence is not sufficient because it is not credible, that was a decision for the jury and not our Court. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) ("The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record.").