

# NUMBER 13-22-00292-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ORLANDO REYES PEREZ,**                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

---

## On appeal from the 206th District Court
## of Hidalgo County, Texas.

---

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Opinion by Justice Benavides**

Appellant Orlando Reyes Perez was convicted by a jury of one count of continuous sexual abuse of a young child and two counts of aggravated sexual assault of a child, all first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.02(b), 22.021(a)(1)(B). By six issues, which we have reorganized, Perez complains that (1) the evidence was legally

insufficient to support his conviction for continuous sexual abuse, (2–4) the jury charge contained several errors, (5) he was denied his right to effective assistance of counsel, and (6) his convictions for aggravated sexual assault violated his double jeopardy rights. The State concedes that Perez's convictions for aggravated sexual assault were lesser included offenses of his continuous sexual abuse conviction. We affirm the conviction for continuous sexual abuse and vacate the other two convictions.

## I.    BACKGROUND

The indictment alleged that Perez, while seventeen years of age or older, committed two or more acts of sexual abuse against Maria Garcia,[1] a child younger than fourteen years of age, during a period that was thirty or more days in duration. *See id.* § 21.02(b). The specific period of abuse alleged in the indictment was from on or about September 15, 2017, through on or about December 1, 2018, and the acts of sexual abuse alleged were aggravated sexual assault of a child and indecency with a child by contact. By a separate count, the State alleged that, on or about October 27, 2018, Perez committed aggravated sexual assault against a child by intentionally or knowingly causing the sexual organ of Maria to contact Perez's sexual organ. *See id.* § 22.021(a)(1)(B)(iii). Finally, the State also alleged that, on or about January 1, 2019, Perez committed aggravated sexual assault against a child by intentionally or knowingly causing the sexual organ of Maria to contact Perez's mouth.[2]  *See id.* Although Perez's trial spanned several

---

[1]  To protect the complainant's identity, we are using the pseudonym given to her in the indictment. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"). Out of an abundance of caution, we will also use initials to identify her immediate family members.

[2]  The indictment included a fourth count that was abandoned by the State prior to trial.

days and included numerous witnesses, we highlight only the evidence that is necessary to our disposition of Perez's appeal.

Trial testimony established that Maria was born in 2011. Her mother, J.T., became romantically involved with Perez in the summer of 2015. J.T. and Maria moved in with Perez shortly after, and when the couple eventually married in 2017, Perez became Maria's stepfather. Maria's biological father was not involved in her life, and Maria referred to Perez as "dad." J.T. and Perez had three daughters together: A.D.R., born June 25, 2016; A.L.R., born July 31, 2017; and A.A.R., born December 31, 2018. The family moved to Hidalgo County in 2017, first living in an apartment complex for approximately a year and then moving into a "purple house." They resided at the house with Perez's brother, sister-in-law, and the couple's baby. The two couples slept upstairs in separate bedrooms, and Maria and her half-sisters shared a room downstairs but slept in separate beds.

Maria made an initial outcry to her mother on March 27, 2019. According to J.T., the family had been living in the purple house for approximately six months at the time of Maria's outcry. J.T. and Perez began to argue, and when Perez left the room, Maria told J.T. that Perez "touches [her] private and . . . kisses [her] on the mouth." When Maria said Perez was touching her "private," J.T. understood this to mean that Perez was touching Maria's vagina. According to J.T., Perez walked backed into the room and after seeing their expressions, he began acting "scared" because "he knew what was going on."

J.T. then confronted Perez with Maria's allegations, which he initially denied. J.T. explained that Maria, who was only seven years old at the time, then accused Perez of

3

"lying." According to J.T., Perez then dropped to his knees and said, "Please forgive me; I already asked for forgiveness," which J.T. interpreted as an implicit admission that Perez had sexually abused Maria. J.T. further testified that Perez physically restrained her on a couch before leaving the room to retrieve a knife from the kitchen.

At that point, J.T. ran out of the house and placed separate calls to her sister and sister-in-law for help. One sister called the police, and both sisters drove to the house. Just before the police arrived, Perez left in the family vehicle. As he was getting into the vehicle, J.T. saw the kitchen knife in Perez's back pocket. One of the sisters testified that as Perez was leaving, he shouted in Spanish something to the effect of, "I'm going to give myself up." Shortly after he left the scene, Perez crashed his vehicle into a light pole. The police found Perez unconscious in his vehicle; he had suffered a stab wound to his abdomen and was holding a crucifix. One officer opined that "it looked like a self-inflicted wound." The police recovered a bloody kitchen knife on the floorboard of the vehicle, and J.T. identified it as the same knife that was in Perez's possession when he left the house.

In the following days, Maria revealed additional details about the alleged abuse to her mother. According to J.T., Maria first described an incident that occurred while they were living in the apartment. Maria was in the bathroom in her underwear, getting ready to take a shower, when Perez came in the room and pulled down his pants so that he was only wearing boxers. Perez then "sat [Maria] on top of him and she felt his private part on her private part." Maria also described a separate incident to her mother that occurred while Maria was asleep in her bedroom at the purple house. Maria told J.T. that she awoke to what felt like "worms down there" and that Perez was "licking her private."

4

On April 1, 2019, Maria was taken for a forensic interview at the local Child Advocacy Center. Without going into detail about what Maria said, the interviewer testified that Maria made an outcry of sexual abuse and identified Perez as her abuser. The interviewer confirmed that Maria described "more than one act of sexual abuse" and that the abuse occurred "more than one time." Maria also saw a sexual assault nurse examiner while she was at the Child Advocacy Center. During the exam, Maria provided the nurse with a narrative of the alleged abuse that was memorialized in a written report. The report was admitted into evidence, and the nurse read Maria's narrative into the record, including the following allegations:[3]

> He has been kissing me in the lips—patient points to mouth—and laying down with me. And then I woke up and felt something, and then I woke up and I said, what are you doing? He said nothing. He kissed me on my lips. Patient points to mouth. It felt warm, but it was his tongue in my lips. Patient points to mouth. I was taking off my clothes and [A.D.R.] was in the shower, and then I put the towel on me and I said, I'm going to shower, and he said, sit on me. And he put his private part on me, like just on my underwear. He didn't take it off or nothing. He licked me. I always sleep in my underwear. I felt warm and I was asleep. I felt something and my dad pulled off my shorts and he laid down. It was on my private part. Patient points to female sexual organ, the tongue. He said, you better not say anything, but I didn't listen to him.

The lead police investigator assigned to the case had the opportunity to observe a recording of the forensic interview. According to the investigator, Maria gave a detailed description of the alleged abuse that "was consistent through[out] her forensic interview." He also noted that Maria's "story didn't change" between her outcries, forensic interview, and medical examination. In his experience, a child as young as Maria would not have

---

[3] Because the nurse's report contains numerous run-on sentences, we have elected to use the reporter's transcription of the narrative as it was read into the record.

been able to maintain a consistent story with that level of detail if she had been coached on what to say.

After the allegations of abuse came to light, Perez was interviewed by a Child Protective Services (CPS) investigator. According to the CPS investigator, Perez admitted that he kissed Maria on the mouth once and instructed Maria not to tell her mom because "it was inappropriate [and] wasn't supposed to happen."

Maria, who was ten years old at the time of trial, could not recall specific dates, but she was able to identify where she was living and which of her sisters had been born during the period of alleged abuse. She said the abuse began after A.D.R. was born but before A.L.R. was born. She confirmed that the abuse continued after both A.L.R. and A.A.R. were born. She also agreed that the abuse occurred "that whole time" and that it happened "more than two times."

As far as specific acts of sexual abuse, Maria testified that Perez would use "[h]is hands" to "touch" her "private part" when they were living at the apartment. When asked what she uses her private part for, Maria responded that she uses her private part for "[p]eeing." Maria further testified that when they moved into the purple house, Perez would come to her room at night and "put his tongue on [her private part]." She also said that Perez "would kiss me and, like, tell me to touch his parts." When asked what she meant by "his parts," Maria explained that she was referring to "[h]is private."

Perez raised several defensive theories in his opening statement. Among them, Perez suggested that the allegations against him were impossible because he was never alone with Maria, and the household was full of people. He also said the allegations were

6

manufactured by J.T., whom Perez described as jealous, volatile, and vindictive. As far as his stab wound, Perez claimed that it was a freak accident that occurred during the car wreck.

Perez's brother, who lived with the family during the period of alleged abuse, testified on Perez's behalf. He did not see any abuse but agreed with the State that if any abuse had occurred, it would have happened in private. He also said he did not believe his brother's account of how the stabbing occurred. Several of Perez's other family members testified that they had spent time around the family, they had never seen any abuse, and Maria had never made any accusations to them about abuse.

Perez did not object to the jury charge, and the jury returned a guilty verdict on each charge. Perez elected to be punished by the trial court and was sentenced to twenty-five years' confinement on the continuous sexual abuse conviction and five years' confinement on each aggravated sexual assault conviction. The trial court ordered the sentences to be served consecutively. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Perez first contends that the evidence was insufficient to support his conviction for continuous sexual abuse because "the jury could only speculate as to whether the first and last acts of sexual abuse were separated by at least 30 days."

### A. Standard of Review & Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find

7

each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). We defer to the jury's role as the factfinder, which includes "resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)). We consider "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* "To obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant

8

committed at least two acts of sexual abuse against a child younger than 14 years of age during a period of at least 30 days' duration." *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 21.02(b)). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). But, the proof must establish "there is at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse." *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Turner v. State*, 573 S.W.3d 455, 461 (Tex. App.—Amarillo 2019, no pet.); *Pelcastre v. State*, 654 S.W.3d 579, 586 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd).The uncorroborated testimony of a child victim alone is sufficient to support a conviction for a sexual offense. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1).

## B. Analysis

Perez argues that Maria's testimony was too "vague" to satisfy the duration element of the offense because she used the births of her sisters to describe the period of abuse. However, "[t]he legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.). And just as the legislature anticipated, children often use life events rather than specific dates to define the period of continuous abuse. *See, e.g., Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (finding evidence of

continuous abuse sufficient where the complainant testified that the abuse began in the middle of sixth grade and ended when she moved out of the defendant's house). Jurors are permitted to take these benchmarks and draw a reasonable inference about the period of abuse. *Wishert v. State*, 654 S.W.3d 317, 328–29 (Tex. App.—Eastland 2022, pet. ref'd).

Here, it was undisputed that A.D.R. was born on June 25, 2016, A.L.R. was born on July 31, 2017, and A.A.R. was born on December 31, 2018. Maria testified that the abuse began between the births of A.D.R. and A.L.R. and continued to occur after A.A.R.'s birth. Even when Maria's timeline is compressed to its shortest possible length, a reasonable juror could infer that the period of abuse began no later than July 30, 2017, the day before A.L.R. was born, and ended no earlier than January 1, 2019, the day after A.A.R. was born. *See Wishert*, 654 S.W.3d at 328–29; *Baez*, 486 S.W.3d at 595. This period of continuous abuse was clearly more than thirty days in duration. *See* TEX. PENAL CODE ANN. § 21.02(b). Accordingly, the evidence was sufficient to support the conviction. Perez's first issue is overruled.

## III.    JURY CHARGE ERROR

By his second, third, and fourth points of error, Perez argues that he was egregiously harmed by unobjected-to errors in the jury charge. Specifically, Perez complains that "[t]he charge did not clearly tell the jury that the acts had to be at least 30 days apart." He also argues that the jury was not required to agree on the specific dates or acts of sexual abuse, and this effectively denied him his constitutional right to a jury.

10

**A.      Standard of Review & Applicable Law**

A jury charge must instruct the jurors on the law that is applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. "Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (cleaned up). A jury charge generally contains an abstract portion and an application paragraph. "The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). "The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).

Alleged jury-charge error involves a two-step analysis: "First, we determine whether the charge is erroneous. If it is, then we must decide whether the appellant was harmed by the erroneous charge." *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). To determine whether jury charge error occurred, a reviewing court "must examine the charge as a whole instead of a series of isolated and unrelated statements." *Vasquez*, 389 S.W.3d at 366 (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). When the appellant fails to timely object to the alleged error, as occurred here, the record must show that the appellant was egregiously harmed by the error. *Alcoser*, 603 S.W.3d at 165. "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.*

11

To establish continuous sexual abuse of a young child, the State must prove four elements: (1) the defendant "commit[ted] two or more acts of sexual abuse," (2) "during a period that is 30 or more days in duration," and "at the time of the commission of each of the acts of sexual abuse," (3) the [defendant was] 17 years of age or older," and (4) "the victim [was] a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b).

## B. Duration Element

Perez argues that the jury charge "as a whole" permitted the jury to convict him by finding that he committed two or more acts of sexual abuse, even if the acts occurred fewer than thirty days apart. The jury instruction in question provides in pertinent part:

### 1.

A person commits the offense of Continuous Sexual Abuse of a Child if:

> (1) During a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims;

> (2) At the time of the commission of each of the acts of sexual abuse, the actor was 17 years of age or older and the victim is a child younger than 14 years of age.

. . . .

### 4.

> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the Defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the Defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

### 5.

Now if you find from the evidence beyond a reasonable doubt that

12

> the Defendant, ORLANDO REYES PEREZ, did then and there, in Hidalgo County, Texas, during a period that was 30 or more days in duration, to-wit: from on or about the 15th day of September, 2017, to on or about the 1st day of December, 2018, when the defendant was 17 years of age or older, committed two or more acts of sexual abuse against MARIA GARCIA, a pseudonym, a child younger than 14 years of age, namely aggravated sexual assault of a child and indecency with a child, then you will find the Defendant guilty of the offense of Continuous Sexual Abuse of a Child as charged in this indictment.

Perez has failed to explain how this language misstates the law. *See Vasquez*, 389 S.W.3d at 366. The charge expressly required a finding that, during a period that was thirty or more days in duration, Perez committed two or more acts of sexual abuse, and thus the charge reflects the language and structure of the offense as provided by the Penal Code. *See* TEX. PENAL CODE ANN. § 21.02(b). We disagree with any suggestion that delineating the period of continuous abuse with specific dates that were themselves more than thirty days apart somehow nullified the abstract portion of the charge or the immediately preceding requirement in the application paragraph that Perez committed two or more acts of sexual abuse "during a period that was 30 or more days in duration." *See id.*; *Lewis v. State*, No. 14-21-00691-CR, 2023 WL 4873306, at *7 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd) (finding no jury charge error where the trial court used similar language in the application paragraph); *see also Chavez v. State*, No. 13-22-00551-CR, 2023 WL 5486232, at *3–4 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2023, no pet.) (mem. op., not designated for publication) (same); *but see Turner*, 573 S.W.3d at 462 (concluding that similar language was erroneous because, "[w]hile someone with an understanding of the statute might argue that this provision is clear, the express language used does not make it clear that the first and last acts must occur thirty

13

or more days apart"). Instead, the timeframe provided in the application paragraph merely "explain[ed] to the jury, in concrete terms, how to apply the law to the facts of the case." *See Yzaguirre*, 394 S.W.3d at 530.

The trial court's only obligation is to accurately instruct the jury on the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. The trial court did so here by tracking the language in the statute, and "[f]ollowing the law as it is set out by the Texas Legislature will not be deemed error on the part of the trial judge." *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996). Accordingly, we overrule Perez's second issue.

## C.    Jury Unanimity & Right to a Jury Trial

By separate but interrelated issues, Perez argues that the jury charge violated his right to a unanimous jury under the Texas Constitution and his right to a jury trial as contemplated by the Sixth Amendment of the United States Constitution. *See* TEX. CONST. art. V, § 13; U.S. CONST. amend. VI. He points to language in the jury charge that, in his own words, "did not require the jury to agree on dates or specific incidents to form the basis of their verdict as to Count 1."

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). An error involving jury unanimity "vitiates the entire jury verdict, calling into question whether the appellant received the jury trial guaranteed by the Sixth Amendment at all." *Dixon v. State*, 201 S.W.3d 731, 739 (Tex. Crim. App. 2006) (Price, J., dissenting). Every juror must agree that "the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745. But this does not mean that the

14

"jury must unanimously find that the defendant committed that crime in one specific way." *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). In other words, "[t]he unanimity requirement is not violated by instructing the jury on alternative theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents." *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004).

The continuous sexual abuse statute expressly provides that "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). Rather, "[t]he jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.* The jury instruction in this case tracked the statutory language.

We have previously held that § 21.02(d) does not violate the jury-unanimity requirement because the individual "acts of sexual abuse are merely the manner and means of committing an element of the offense." *Reckart v. State*, 323 S.W.3d 588, 601 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd). Many of our sister courts have reached the same conclusion. *See Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.) (collecting cases). Perez has not pointed to any authority that would require us to revisit our prior holding. Accordingly, his third and fourth issues are overruled.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fifth issue, Perez argues that he was denied his constitutional right to

15

reasonably effective assistance of counsel because his trial counsel failed to object to the alleged jury charge errors discussed above.

The United States and Texas Constitutions guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. ANN. art. 1.051; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland*, 466 U.S. at 687). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "[F]ailure to show either deficient performance or prejudice will defeat the ineffectiveness claim." *Id.*

Having found no error in the jury charge, Perez cannot show that his counsel's failure to object to the charge was deficient. *See Navarro v. State*, 623 S.W.3d 97, 113 (Tex. App.—Austin 2021, pet. ref'd) ("[T]he evidence did not authorize the submission of an accomplice-witness instruction, either *sua sponte* by the trial court or on appellant's request, in the jury charge. Accordingly, appellant has not demonstrated that his counsel

16

was in error, much less deficient, for failing to request an accomplice-witness instruction in the jury charge for prohibited sexual conduct."). His fifth issue is therefore overruled.

## V.    DOUBLE JEOPARDY

Finally, Perez argues that his convictions for aggravated sexual assault of a child violate his double jeopardy rights. The State confesses error in the judgment.

### A.    Applicable Law

The Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, protects a person from multiple punishments for the same offense. U.S. CONST. amends. V, XIV; *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the Legislature has made it clear that only one punishment is intended." *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008).

As previously mentioned, "[t]o obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against a child younger than 14 years of age during a period of at least 30 days' duration." *Ramos*, 636 S.W.3d at 651 (citing TEX. PENAL CODE ANN. § 21.02(b)). Aggravated sexual assault of a child is among the predicate offenses listed as an "act of sexual abuse." TEX. PENAL CODE ANN. § 21.02(c)(4).

Dual convictions for continuous sexual abuse and a predicate offense are prohibited under certain circumstances. *Id.* § 21.02(e). "A defendant charged with

17

continuous sexual abuse who is tried in the same criminal action for an enumerated offense based on conduct committed against the same victim may not be convicted for both offenses unless the latter offense occurred outside the period of time in which the continuous-sexual-abuse offense was committed." *Price v. State*, 434 S.W.3d 601, 606 (Tex. Crim. App. 2014) (paraphrasing TEX. PENAL CODE ANN. § 21.02(e)). Put simply, "the Legislature did not intend to permit dual convictions for continuous sexual abuse and for an enumerated act of sexual abuse unless the latter occurred during a different period of time." *Id.*

## B. Analysis

As the State acknowledges, Perez's convictions for aggravated sexual assault were based on acts of sexual abuse that Perez committed against Maria during the period of continuous abuse. Accordingly, we agree with the parties that the Legislature did not intend for Perez to be convicted separately for all three crimes. *See* TEX. PENAL CODE ANN. § 21.02(e); *Price*, 434 S.W.3d at 606. Perez's final issue is sustained.

## C. Remedy for Double Jeopardy Violations

When a multiple-punishment violation occurs, "the remedy is to affirm the conviction for the most serious offense and vacate the other convictions." *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008). Generally, the most serious offense is "the offense in which the greatest sentence was assessed." *Id.* at 373. Here, the greatest punishment assessed was for the continuous sexual abuse conviction. Therefore, we retain that conviction and vacate the other two convictions. *See id.*

18

## VI.  CONCLUSION

We affirm the conviction for continuous sexual abuse of a young child and vacate the convictions for aggravated sexual assault of a child.

GINA M. BENAVIDES
Justice

Concurring Opinion by Chief Contreras.

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of February, 2024.

19