**Modified and Affirmed and Opinion Filed February 28, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00601-CR

**DANIEL A. RIVERA AGUIERRE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-2132997-H**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Molberg

A jury convicted appellant Daniel Rivera Aguierre of continuous sexual abuse of a child younger than fourteen and assessed punishment at twenty-seven years' confinement. In this appeal, he argues (i) the trial court erred by instructing the jury on an alternate predicate act of sexual abuse not supported by the evidence, (ii) the evidence is insufficient to support his conviction because there was insufficient evidence of a second incident of abuse and there was no evidence sufficiently describing two instances of sexual abuse at least thirty days or more in duration, (iii) the trial court erred by refusing to charge the jury on the lesser-included offense of

aggravated sexual assault of a child, and (iv) the trial court erroneously failed to conduct a preliminary inquiry to ensure the complainant was competent to testify. In a cross-point, the State requests that we modify the judgment to correct the names of counsel appearing for the parties. We modify the judgment, and as modified, affirm.

## BACKGROUND

JR was born in 2009, and her father, appellant, was eighteen at the time. When JR was eleven, she reported that she had been sexually abused by her father from the time she was approximately five or six years old until she was approximately eight years old.

Appellant and JR's mother divorced when JR was two. JR lived with her mother and would visit appellant on Sundays. Although she did not visit every Sunday, when she did visit, appellant would pick her up at her mother's house and take her to his apartment in Irving where he lived with his father.

JR's mother noticed a change in JR when she was five or six years old. JR began to gain weight and would sometimes not want to visit her father.

JR had a close relationship with her mother's cousin, AL, and JR would visit AL every day after school. AL is approximately seven years older than JR and thinks of JR as a little sister.

JR told AL appellant had sexually abused her but did not want to discuss it. AL told her mother, who in turn told JR's mother. JR's mother reported the abuse to

the police and took JR to the hospital for a forensic interview. JR did not want to give a forensic interview because she did not want to get her father in trouble.

Melissa Hernandez, a forensic interviewer at the Dallas Children's Advocacy Center ("DCAC") interviewed JR and testified about the interview at trial. During the interview, JR provided details about the first and last time appellant sexually abused her and said the same abuse happened multiple times.

JR also testified at trial and said that appellant sexually abused her more than ten times and his penis touched the "line and hole" of her butt. The abuse occurred when she visited appellant at his apartment on Sundays.

The jury also heard testimony from JR's mother, JL, the investigating officer, a SANE nurse, the DCAC Assistant Director of Clinical Services, and appellant's cousin, who testified that appellant admitted the allegations against him were true.

Appellant did not testify. His mother, father, and bible study leader offered testimony in his defense.

At the conclusion of the guilt-innocence phase of trial, the jury found appellant guilty as charged in the indictment. Following a punishment hearing, the jury assessed punishment at twenty-seven years in prison. This timely appeal followed.

## ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

Appellant's second and third issues argue the evidence is insufficient to support his conviction. Specifically, he contends there is insufficient evidence describing a second incident of sexual abuse and the evidence did not sufficiently describe two instances of sexual abuse thirty or more days in duration.

In determining whether the evidence is legally sufficient to support a conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *see also Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of evidentiary weight and witness credibility. *See Braughton*, 569 S.W.3d at 608; *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015). The complainant's testimony, standing alone, is sufficient to support a conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. art. 38.07(a), (b); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *Bishop v. State*, No. 05-18-01496-CR, 2020 WL 3821076, at *7 (Tex. App.—Dallas July 8, 2020,

no pet.) (mem. op.) (not designated for publication) (citing *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd)).

We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13.

A person commits the offense of continuous sexual abuse of a child if the person commits two or more acts of sexual abuse against a child under fourteen during a period that is thirty or more days in duration, when the person is at least seventeen years of age at the time each act of abuse is committed. *See* TEX. PENAL CODE § 21.02(b); *Alexander v. State*, No.05-18-00784-CR, 2019 WL 3334625, at *3 (Tex. App.—Dallas Jul. 25, 2019, no pet.) (mem. op., not designated for publication). Although the exact dates of the abuse need not be proven, the offense does require proof that two or more acts of sexual abuse occurred during a period of thirty days or more. TEX. PENAL CODE § 21.02(b); *Garner*, 523 S.W.3d at 271; *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (quoting *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.). But the jury is not required to agree unanimously on which specific acts of sexual abuse were committed or the exact date when those acts were committed.

TEX. PENAL CODE § 21.02(d); *Render v. State*, 316 S.W.3d 846, 856 (Tex. App.—Dallas 2010, pet. ref'd).

For purposes of this statute, "acts of sexual abuse" includes several enumerated acts, including aggravated sexual assault under Penal Code Section 22.02(c)(4). As relevant here, a person commits aggravated sexual assault if the person knowingly or intentionally causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor, and the victim is younger than fourteen years of age. TEX. PENAL CODE § 22.021(a)(1)(B)(iv), (2)(B).

The indictment alleged that appellant committed continuous sexual abuse of a child by two separate manner and means: "by contact of the complainant's female sexual organ by [appellant's] sexual organ and by the contact of the complainant's anus by [appellant's] sexual organ." As the State told the jury during voir dire, however, the only act of sexual abuse at issue in this case was the allegation that appellant knowingly or intentionally caused contact between JR's anus and his sexual organ.

Appellant insists that JR did not describe a second sexual act with any specificity, and her testimony is vague and conclusory. Appellant further argues that even though JR testified that the sexual act occurred on more than one occasion, there is no context as to what specifically occurred. We disagree.

"The Texas Legislature created the offense of continuous sexual abuse of a child in response to an expressed need to address sexual assaults against young

children who are typically unable to give precise dates when there are ongoing acts of sexual abuse." *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2016, pet. ref'd) (quoting *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *see also Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses on a continuing course of conduct . . . ."). To this end, courts give wide latitude to the testimony of child sexual abuse victims, *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990), and a child victim's description of what happened and when it occurred need not be expressed with the same level of sophistication and detail that an adult might use. *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.); *see also Flanagin v. State*, No. 05-19-00858-CR, 2021 WL 2253502, at *6 (Tex. App.—Dallas June 3, 2021, no pet.) (mem. op., not designated for publication) (although child only specifically described one act of sexual abuse, her testimony that the same "kind of touching" occurred previously provided legally sufficient evidence to support conviction for continuous sexual abuse of a young child).

JR testified that the sexual abuse began when she was approximately five or six years old and continued until she was eight years old. She would visit appellant on Sundays in his two-bedroom apartment in Irving. JR drew a picture of and described appellant's bedroom in that apartment.

JR said that appellant's penis touched the "line and hole" of her butt. Although she could not specify the number of times this occurred, she said it occurred more than ten times.

At the time she testified, JR could not remember the specific details of the first or last time this happened, but she described a time that she did remember for the jury. On that occasion, JR was laying on appellant's bed and was using her cell phone. Appellant laid down on the bed next to her, with his whole body touching her. He pulled her shorts or pants, and her underwear, down to her ankles, and pulled his pants and underwear down. He then stuck his penis in her "butthole." JR said this made her "butthole" feel "weird" and "sticky." Appellant moved his penis "front and back," and "up and down."

J.R. testified that the sexual abuse always happened during the day, when her grandfather was working or doing laundry. The abuse always involved appellant putting "his penis in her butthole."

Melissa Hernandez, the DCAC forensic interviewer corroborated JR's testimony and provided additional details about JR's outcry. JR was eleven when she was interviewed by Hernandez. During the interview, JR. disclosed that appellant began sexually abusing her when she was approximately six or seven years old and continued to abuse her until she was approximately eight or nine years old.

JR described the first and last times she was abused. The last incident occurred when she was eight or nine years old. On that occasion, she was laying on appellant's

bed looking at TikTok on her phone when appellant came into the room. Appellant got into bed and under the blanket with her. Initially, appellant was laying on his back, but he turned over onto his side and pulled JR closer to him. He then took off both of their clothes and put his penis in her "butt." JR told Hernandez it was "uncomfortable" and "slimy," and even "afterward her butt felt slimy." JR said she tried to move away from appellant but was unable to do so. JR's body was shaking both during and after, and she was not able to keep her body from shaking. After this incident, appellant took her to Braum's for ice cream and asked her if he was a bad dad. JR told him he was.

JR told Hernandez this happened multiple times, and said it was "the same thing that happened the last time." Hernandez explained that when a child has gone through abuse that occurred for "many years, months, or weeks, a child may say, it always happened the same, or he would always do this, they would always do that."

JR also told Hernandez about the first time appellant sexually abused her when she was five or six years old. She was laying down watching YouTube and Netflix, when appellant put his penis in her butt. JR said that it felt weird and uncomfortable. JR said that this is what would happen on the Sundays she went to appellant's apartment.

Sandra Onyinanya, a pediatric nurse practitioner at the REACH Clinic at Children's Health Medical Center, examined JR and JR's exam was normal. But she

explained that a normal exam does not mean the child was not abused. According to Onyinanya, 85 to 95% of exams are normal.

Holly Dotson, the Assistant Director of Clinical Services at DCAC testified about child abuse dynamics, including who can be a perpetrator and victim of child sexual abuse, grooming, delayed outcries, and the varying ways a child victim may talk about the abuse. Dotson opined that it could potentially be considered grooming if a child is sexually abused and then the perpetrator takes the child out for ice cream. She further explained that most children delay outcry and many factors can be attributed to the delay, including fear of not being believed and fear that the perpetrator could get in trouble. When the perpetrator is a family member, there can be very mixed emotions.

Adrian Cital, appellant's cousin, also testified about visiting appellant when appellant was incarcerated. Appellant's mother had requested that Cital visit because she wanted to find out of the allegations were true. During the visit, appellant told Cital, "I f—d up. I f—d up, Cuz. I'm sorry." Cital asked appellant why he had done it, and appellant told him "it had been done to him." Appellant was sobbing and crying when he admitted the allegations were true.

Appellant's insistence that JR only testified about a single instance of abuse is misplaced. Repeating the same sexual act does not equate to a single occurrence, particularly when JR testified that the abuse occurred on multiple occasions over a period of years. While JR could not provide specific dates, her testimony, together

with Hernandez's corroboration described the first and last incidents of sexual abuse that occurred between the ages of six and eight or nine, described what occurred on those occasions, including the sexual act, the physical sensations, the place where the abuse occurred, and what she was watching on her phone at the time. *See Buxton v. State*, 526 S.W.3d 666, 676–77 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (op. on reh'g) (holding evidence that abuse occurred regularly from the time victim was five or six years old until she was ten years old was sufficient to prove multiple sex acts occurring thirty or more days apart); *Baez v. State*, 486 S.W.3d 592, 594–95 (Tex. App.—San Antonio 2015, pet. ref'd) (holding evidence was sufficient to prove multiple acts of abuse committed thirty or more days apart when child victim testified that abuse started when she was in sixth grade and that the appellant had touched her "often," "more than once a week," until she moved out of the appellant's house, and when sexual assault nurse examiner testified that the child victim told her that it started happening when the child was "13 to 14 years old"); *Witcher v. State*, 638 S.W.3d 707, 709–710 (Tex. Crim. App. 2022) (evidence sufficient with approximate time frame); *see also Lewis v. State*, No. 06-21-00021-CR, 2022 WL 630288, at *4–5 (Tex. App. Texarkana—Mar. 4, 2022, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 143 S.Ct. 740 (2023) (jury could infer from other evidence that abuse occurred on at least two occasions over at least a thirty-day period). Based on our review of the entire record and after considering all the evidence in the light most favorable to the verdict and reasonable inferences

–11–

therefrom, we conclude a rational jury could have found that two or more acts of sexual abuse occurred during a period of thirty days or more. *See Marra v. State*, No. 05-22-00520-CR, 2023 WL 6547934, at *5 (Tex. App.—Dallas Oct. 9, 2023, no pet.) (mem. op., not designated for publication). Appellant's second and third issues are overruled.

## B.     Instruction on Alternate Predicate Act of Sexual Abuse

Appellant's first issue argues the trial court erred by instructing the jury on an alternate predicate act of sexual abuse not supported by the evidence. The application paragraph of the jury charge at guilt-innocence tracked the indictment, including two predicate acts of sexual abuse, as follows:

> Now, bearing in mind the foregoing instructions, if you unanimously find from the evidence beyond a reasonable doubt that the [appellant], Daniel Rivera Aguirre, on or about the 1st day of September 2017, in the County of Dallas and State of Texas, did then and there, during a period that was 30 days or more in duration, when the [appellant] was 17 years of age or older, intentionally or knowingly committed two or more acts of sexual abuse against J.R., a child younger than 14 years of age, hereinafter called complainant; namely by contacting the complainant's sexual organ by the [appellant's] sexual organ, or by contacting the Complainant's anus by the [appellant's] sexual organ, then you will find the defendant GUILTY of the offense of Continuous Sexual Abuse of a Child.

Appellant's assertion that there was no evidence adduced at trial to support the theory that appellant's sexual organ touched JR's female organ is supported by the record and the State concedes the instruction referencing this predicate act was erroneous.

–12–

The trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. Jury instructions must apply the law to the facts adduced at trial and conform to allegations in the indictment. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). Those instructions should be reduced to the theories that are supported by the evidence at trial. *Moulton v. State*, 395 S.W.3d 804, 810 (Tex. Crim. App. 2013). In this instance, because there was no evidence adduced concerning the touching of JR's female organ by appellant's sexual organ, the inclusion of this predicate act was erroneous.

When, as here, there was no timely and proper trial objection to the charge error, an appellant must show "egregious harm" to obtain a reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *see Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). That is, we reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171.

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villareal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villareal*, 453 S.W.3d at 433

(quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2016)). In our egregious harm analysis, we examine the relevant portions of the record which must show that appellant suffered actual harm, as opposed to theoretical harm, because of the error. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Egregious harm is only shown when the error "created such harm that [the appellant was deprived of] 'a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171.

To determine if the complained-of charge error egregiously harmed appellant, the Texas Court of Criminal Appeals has identified four factors that we should weigh and consider: (1) the charge as a whole; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) all other relevant information in the record that may inform our analysis. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)); *Almanza*, 686 S.W.2d at 171.

In addition, "[i]n a jury charge alleging alternative theories, harm must be measured at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge." *Sanchez*, 376 S.W.3d at 775. In *Sanchez*, the court held:

> When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted. Thus, in the context of manners and means, even when a jury charge submits an erroneous manner and means for committing a

–14–

single offense, if the evidence otherwise suffices to prove any of the alternative, non-erroneous manners and means submitted, the defendant is not harmed by the submission of the erroneous manner and means.

*Id.* at 775–76; *see also Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (general verdict sufficient to support finding under any alternative theories)*; Herrera v. State*, 367 S.W.3d 762, 776 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (even with erroneously submitted theory conviction can stand if guilt found under another submitted theory).

### *The Entire Jury Charge*

With this context, we begin by considering the charge as a whole. *Cosio*, 353 S.W.3d at 777. Other than the erroneous instruction, the charge properly instructed the jury on the circumstances under which it could convict appellant of continuous sexual abuse of a child. It correctly relayed the statute and defined the requisite mental states. The charge further explained that unanimity was not required on the specific acts or the exact dates on which the offense was committed. *See* TEX. PENAL CODE § 21.02(d); *McMillan v. State*, 388 S.W.3d 866, 871–73 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, read as a whole and in the proper context, the entire jury charge weighs only slightly in favor of harm.

### *The State of the Evidence*

We have concluded the evidence is sufficient to support appellant's conviction under the correctly submitted alternative theory—that appellant's penis contacted JR's anus, and we need not revisit that evidence here. Because there was

no evidence concerning the improperly charged theory, there is a strong likelihood that the verdict was based on the properly submitted theory of recovery and the jury was not affected by the erroneous portion of the charge. *See Sanchez*, 376 S.W.3d at 775. The properly charged alternative required the jury to be convinced beyond a reasonable doubt that appellant committed two or more acts of sexual abuse against JR during a period of thirty days or more, and the evidence established that this occurred. *See id*. We view the overwhelming state of the evidence as weighing heavily against egregious harm. *See McDow v. State*, 05-17-01201-CR, 2019 WL 2590968, at *8 (Tex. App.—Dallas June 25, 2019, no pet.) (mem. op., not designated for publication); *Keen v. State*, No. 03-19-00744-CR, 2021 WL 4819078, at *10 (Tex. App.—Austin Oct. 15, 2021, pet. ref'd) (mem. op., not designated for publication).

### *The Arguments of Counsel*

During voir dire, the State explained the statutory elements and the specific sexual acts underlying an offense. Then the prosecutor made clear which of the proscribed acts was at issue in this case, saying "the sexual act we are talking about is going to be intentionally or knowingly [causing] the anus or sexual organ of a child to contact the sexual organ of another."

Notwithstanding appellant's characterization, the State did not emphasize the error in closing argument. To the contrary, the State pointed out that the jury was only required to find one of the two predicate acts listed in the indictment.

Specifically, the prosecutor told the jury, "It reads 'and' but as you heard in the jury charge, [it's] actually 'or' . . . So [it's] not that it has to be both of these two things. [It's] an 'or.'" Otherwise, the State did not argue or even mention the erroneous predicate act. Instead, the argument was devoted to the evidence concerning contact with JR's anus by appellant's sexual organ. The arguments of counsel do not weigh in favor of harm. *See Cosio*, 353 S.W.3d at 777.

*Other Relevant Information*

Finally, the fourth "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether appellant suffered egregious harm as a result of the complained-of charge error. *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

We note at the outset that the indictment contains the very language that appellant challenges on appeal. But appellant did not object to the form or substance of the indictment prior to trial or claim that he lacked notice of the charge filed against him. *See Smith v. State*, 340 S.W.3d 41, 52 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Moreover, the record shows that the jury never inquired of or submitted any note or other form of communication to the trial court regarding the deficiency in the charge. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.); *Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd).

–17–

Therefore, it is unlikely that the jury was influenced, confused, or misled by the erroneous instruction. Further, appellant does not point to, nor have we found, other information in the record that would either assist in our analysis or support a finding of egregious harm.

Because there is no other relevant information in the record before us that shows or suggests confusion or that the jury's verdict was influenced or affected by the complained-of instructions, we conclude the fourth factor does not weigh in favor of finding that appellant suffered egregious harm.

Considering the entire record, we conclude the erroneous jury charge did not result in egregious harm to appellant. Appellant's third issue is resolved against him.

## C.    Lesser-included Offense

Appellant's fourth issue argues the trial court erred in denying his request that the trial court instruct the jury on the lesser-included offense of aggravated sexual assault of a child. According to appellant, JR only testified about one specific instance of sexual abuse, and he was therefore entitled to an instruction on the lesser-included offense because it was a rational alternative to the charged offense.

We review a complaint of charge error in two steps. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we examine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). If there is error, we review the record to determine whether sufficient harm requires reversal of the conviction. *Id*.

An offense is a lesser-included offense if it is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. art. 37.09(1). In reviewing a trial court's denial of an instruction on a lesser offense we look at the evidence in the light most favorable to the requested instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

A defendant is entitled to submission of a lesser-included offense only if both prongs of a two-prong test are satisfied: (1) the requested lesser offense is in fact a lesser-included offense of the charged offence, and (2) there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023) (citing *Bullock v. State*, 509 S.W.3d 921, 924–25 (Tex. Crim. App. 2016).

The first step asks as a matter of law whether the lesser offense is included in the charged offense. *Hernandez v. State*, 631 S.W.3d 120, 123 (Tex. Crim. App. 2021). This step is satisfied if the elements and any descriptive averments in the charging instrument include all the elements of the proposed lesser, without regard to the facts of a given case. *Id.*; *Ritcherson v. State*, 568 S.W.3d 667, 670–71 (Tex. Crim. App. 2018). The second step asks whether "there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Bullock*, 509 S.W.3d at 925.

–19–

Aggravated sexual assault of a child is a lesser-included offense of continuous sexual abuse of a child under the first prong of the test. *See* TEX. PENAL CODE §§ 21.02(c)(4), 22.021(a)(1)(B)(iv), (a)(2)(B); *Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011). We therefore proceed to the second part of the test: Is there some evidence in the record that would permit a rational jury to find that if appellant is guilty, he is guilty only of aggravated sexual assault? *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

Appellant's argument is premised on the assumption that JR only testified about once incident of abuse. We have concluded that the evidence is sufficient to support the jury's conclusion that there were two or more instances of abuse that occurred over at least a thirty-day period. The evidence establishes that there were multiple instances of sexual abuse over a period of years. Because a rational jury could not find that appellant was guilty only of a single instance of aggravated sexual assault, the trial court did not err by denying the instruction. Appellant's fourth issue is overruled.

## D.  The Complainant's Competence to Testify

Appellant's fifth issue argues the trial court abused its discretion by failing to conduct a preliminary inquiry under TEX. R. EVID. 601(a)(2) to ensure that JR was competent to testify. JR was thirteen when she testified at trial.

There is no precise age under which a child is deemed incompetent to testify. *Torres v. State*, 424 S.W.3d 245, 254 (Tex. App.—Houston [14th Dist.] 2014, pet.

ref'd). Rather, as a general rule, every person is presumed competent to testify. TEX. R. EVID. 601; *Baldit v. State*, 522 S.W.3d 753, 761 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Nonetheless, "a person such as a child, is not competent to testify if, upon examination by the trial court, the court finds that the child lacks sufficient intellect to testify concerning the matters in issue." TEX. R. EVID. 601(a)(2); *Villatoro v. State*, 2019 WL 3940971, at *5 (Tex. App.—Dallas Aug.21, 2019, pet. ref'd) (mem. op., not designated for publication); *Baldit*, 522 S.W.3d at 761.

When a party challenges the competency of a child witness, the court will consider whether the witness possesses (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Villatoro*, 2019 WL 3940971, at *5. But the trial court has no duty to conduct a sua sponte preliminary competency examination of a child witness. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998); *Baldit*, 522 S.W.3d at 761. Instead, the party seeking to exclude the witness from testifying must raise the issue of the child witness's competency and has the burden to establish incompetency. *Gilley v. State*, 418 S.W.3d 114, 120–21 (Tex. Crim. App. 2014). Failure to object to a child witness's competency in the trial court, and to object to the lack of a competency hearing, waives the issue for appellate review. *Matson v. State*, 819 S.W.2d 839, 852 (Tex. Crim. App. 1991); *Baldit*, 522 S.W.3d at 762; *De Los Santos v. State*, 219 S.W.3d 71, 80 (Tex. App.—

San Antonio 2006, no pet.); *Fox v. State*, 175 S.W.3d 475, 481 (Tex. App.—Texarkana 2005, pet. ref'd).

Here, appellant did not object to JR's testimony or request a competency hearing. Consequently, the issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1; *Matson*, 819 S.W.2d at 852; *Baldit*, 522 S.W.3d at 762; *De Los Santos*, 219 S.W.3d at 80; *Fox*, 175 S.W.3d at 481. Appellant's fifth issue is overruled.

## E.    State's Cross-Point

The State argues that the judgment should be modified because it incorrectly recites that the attorney for the State was "Thomas Cox #04956487," and the attorney for the Defendant was "Emily Antram #2406087" and incorrectly states Antram's bar number.

We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). More specifically, "[a]ppellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

Here, the record supports the requested modifications. Because the record contains the necessary information to do so, we modify the judgment to correctly

–22–

reflect that "Emily Antram #24086087" appeared as the Attorney for the State, and "Thomas Cox #04956487" appeared as the Attorney for the Defendant.

## CONCLUSION

We have resolved all of appellant's issues against him and sustained the State's cross-point. We modify the trial court's judgment and, as modified, affirm.

/Ken Molberg/

220601f.u05

KEN MOLBERG

Do Not Publish

JUSTICE

TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DANIEL A. RIVERA AGUIERRE, Appellant

No. 05-22-00601-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F-2132997-H. Opinion delivered by Justice Molberg. Justices Carlyle and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that "Emily Antram #24086087" appeared as Attorney for the State and "Thomas Cox #04956487" appeared as Attorney for the Defendant. As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of February, 2024.